1  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
2  Mark Pifko (SBN 228412)
   mpifko@baronbudd.com
3  Natasha Mehta (SBN 272241)
   nmehta@baronbudd.com
4  BARON & BUDD, P.C.
   1999 Avenue of the Stars, Suite 3450
5  Los Angeles, California 90067
   Telephone:  (310) 860-0476
6  Facsimile:  (310) 860-0480

7  Attorneys for Plaintiffs

8  LEANDRO VICUÑA and PERE KYLE,
   individually, and on behalf of other members of
9  the public similarly situated

**FILED**

DEC 5 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

*DMR*

10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13

14  LEANDRO VICUÑA and PERE KYLE,        Case Number:
    individually, and on behalf of other
15  members of the general public similarly      **cv 11    6119**
    situated,
16                                                **CLASS ACTION**

17              Plaintiffs,                        **COMPLAINT FOR:**

18      vs.                                        (1)   Violation of the Consumers Legal
                                                   Remedies Act (Cal. Civ. Code §§ 1750 *et*
19                                                 *seq.*);
    ALEXIA FOODS, INC., a Delaware
20  Corporation,                                   (2)   Violation of Unfair Competition
                                                   Law (Cal. Bus. & Prof. Code §§ 17200 *et*
21                                                 *seq.*);
                Defendant.
22                                                 (3)   Violation of False Advertising Law
                                                   (Cal. Bus. & Prof. Code §§ 17500 *et*
23                                                 *seq.*);

24                                                 (4)   Breach of Express Warranty;

25                                                 (5)   Negligent Misrepresentation; and

26                                                 (6)   Unjust Enrichment

27                                                 **Jury Trial Demanded**

28

───────────────────────────────────────

CLASS ACTION COMPLAINT

Plaintiffs LEANDRO VICUÑA and PERE KYLE ("Plaintiffs"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action regarding Defendant Alexia Foods, Inc.'s unfair, unlawful, deceptive, and misleading practices conducted in violation of California state law, and common law.  This action involves "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan" frozen potato products (the "Products") that are manufactured and marketed by Defendant Alexia Foods, Inc. ("Defendant" or "Alexia").

2.      In connection with its marketing of the Products and its brand generally, including communications made through product packaging, in print, on television, at public events, promotions, on the company's website, and other media, Alexia makes representations that are intended to mislead consumers to believe that the Products are "All Natural" or "Natural," when in fact, they contain the synthetic chemical preservative disodium dihydrogen pyrophosphate.

3.      Alexia's "All Natural" labeling is central to the company's marketing of the Products, and as a result, Alexia commands a premium price for the Products, using "All Natural" claims to distinguish the Products from its competitors' products.

4.      Alexia's misrepresentations about the Products bombard consumers with a message of being all-natural, and draw consumer attention away from the fact that the Products contain synthetic chemicals.  Indeed, reasonable consumers like Plaintiffs do not believe synthetic chemical ingredients like disodium dihydrogen pyrophosphate are in the Products, which are prominently represented to be "All Natural."  Accordingly, Alexia's marketing and representations are likely to deceive reasonable consumers, and did in fact, deceive Plaintiffs.

5.      Plaintiffs and members of the Class, as defined below, relied on Alexia's "All Natural" representations, and they were material to Plaintiffs and members of the Class, when they purchased the Products.  Therefore, Plaintiffs and members of the Class

1   were damaged because they paid for products that were expressly represented to be "All-

2   Natural," but when they purchased the Products, they received products with synthetic

3   chemicals that were not all-natural.

4       6.      Alexia's consumer deception is both knowing and willful.  Alexia knows

5   what representations it made on the Products – indeed, "All Natural" is prominently

6   featured on practically all of the company's products.  As the manufacturer of the

7   Products, Alexia also knew what ingredients were added to the Products.  Alexia knew, or

8   should have known, that federal laws and regulations define "natural" as excluding

9   synthetic chemicals, and that reasonable consumers understand the word "natural" to

10  exclude synthetic substances like disodium dihydrogen pyrophosphate.

11      7.      Reasonable consumers like Plaintiffs should not be forced to look beyond the

12  misleading representations, which are prominently featured on the Products' packaging,

13  marketing, advertising, and promotional materials, to try and discover the truth from a list

14  of confusing and scientifically complex ingredients identified in small print on the back of

15  the label.  Instead, reasonable consumers should be able to trust that Alexia's

16  representations are consistent with the ingredient list, and not the opposite, as is the case

17  with Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and

18  "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products.

19      8.      Alexia's false and misleading representations violate state law, as detailed

20  below, including California's Unfair Competition Law, False Advertising Law,

21  Consumers Legal Remedies Act, and the common law.

22

23

24

25

26

27

28

2

**JURISDICTION AND VENUE**

9.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendant.  Further, greater than two-thirds of the Class Members reside in states other than the states in which Defendant is a citizen.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiffs ordinarily would expect to try them in one judicial proceeding.

10.     Venue lies within this judicial district under 28 U.S.C. § 1391(a) and (c) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue.

**Intradistrict Assignment**

11.     Consistent with Northern District of California Civil Local Rule 3-5(b), assignment to the San Francisco or Oakland Division is appropriate under Civil Local Rules 3-2(c) and 3-2(d), because acts giving rise to the claims at issue in this Complaint occurred, among other places in this district, in Alameda County.

**PARTIES**

12.     Plaintiff Pere Kyle, an individual, is a citizen of California.

13.     Plaintiff Leandro Vicuña, an individual, is a citizen of California.

14.     Defendant Alexia Foods, Inc. is a Delaware corporation, with its principal place of business located at 51-02 21st Street, #3B, Long Island City, New York  11101, and therefore, Alexia is a citizen of Delaware and New York.

15.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

3

## FACTUAL BACKGROUND

16.     Alexia claims, "Alexia Foods produces an all-natural, trans-fat free line of frozen products for the natural and specialty food consumer . . ."[1] It further claims, "The Alexia Foods portfolio currently includes the No. 1 selling line of *natural* frozen potatoes . . ." (emphasis added).[2]

17.     Alexia's "All Natural" claim is incorporated into the company's primary branding, which appears as follows:



18.     Alexia's branding also includes the following "All Natural" claims:

**ALEXIA All Natural
Potatoes, Breads & Appetizers**



**In Your Grocer's Freezer**



**TRY OUR OTHER
ALEXIA ALL NATURAL
SELECT SIDES**





Italian Sauté



Sauté Sweets



Harvest Sauté

---

[1] *See* News Release, November 6, 2007, "Alexia Foods Serves Up All Natural, Stress-Free Alternatives to Traditional Holiday Fare" available at: http://investor.conagrafoods.com/phoenix.zhtml?c=202310&p=irol-newsArticle_pf&ID=1073405&highlight= (last visited November 30, 2011).

[2] *See* Press Release, November 2009, "Alexia Foods Makes Simple Foods Extraordinary" available at: http://www.alexiafoods.com/downloads/Alexia_Press_Release.pdf (last visited, November 30, 2011).

4

19.   Alexia's "All Natural" claim is featured in the company's coupons:




20.   Alexia also prominently features its "All Natural" branding at events and promotions, including as follows:



5

1

### Alexia's "All Natural" Sauté Reds

2      21.   Alexia sells "Sauté Reds." Alexia claims that its "Sauté Reds" product is

3   "All Natural."

4      22.   The packaging of Alexia's "Sauté Reds" product appears as follows:

5                  Front Panel:                                    Rear Panel:

6

7

8                                                     

9

10                  

11                                                     The Alexia chefs help you add a
                                                       little culinary adventure to your
                                                       meal with creative combinations of
12                                                     premium, all natural ingredients
                                                       and herb-infused 100% olive oil.
13
                                                       Our Sauté Reds are a delicious
14                                                     blend of roasted red potatoes, baby
                                                       portabella mushrooms, whole
                                                       green beans and sweet Spanish
15                                                     onions, with a thyme-infused
                                                       100% olive oil seasoning packet.
16
                                                       As an accompaniment to your
17                                                     favorite entrée, quick and easy
                                                       to prepare Alexia Select Sides
                                                       complement any dining occasion.
18

19

20      23.   The back of the packaging for Alexia's "Sauté Reds" further misrepresents

21   the product's "all natural" status, stating, "The Alexia chefs help you add a little culinary

22   adventure to your meal with creative combinations of premium, *all natural*

23   ingredients . . ." (emphasis added).

24

25

26

27

28

CLASS ACTION COMPLAINT

**Alexia's "All Natural" Mashed Potatoes Yukon Gold Potatoes & Sea Salt**

24.    Alexia also sells "Mashed Potatoes Yukon Gold Potatoes & Sea Salt." Alexia claims that its "Mashed Potatoes Yukon Gold Potatoes & Sea Salt" product is "All Natural."

25.    The packaging of Alexia's "Mashed Potatoes Yukon Gold Potatoes & Sea Salt" product appears as follows:

Front Panel:                                             Rear Panel:





Yukon Gold potatoes are lightly seasoned with Sea Salt to create this creamy and delicious mashed potato recipe that is simple yet sublime. This perfect blend completes any dining occasion.

Quick and easy to prepare Alexia Mashed Potatoes are also available in another fantastic flavor, Red Potatoes with Garlic & Parmesan.

7

**Alexia's "All Natural" Mashed Potatoes Red Potatoes with Garlic & Parmesan**

26.    Alexia also sells "Mashed Potatoes Red Potatoes with Garlic & Parmesan." Alexia claims that its "Mashed Potatoes Red Potatoes with Garlic & Parmesan" product is "All Natural."

27.    The packaging of Alexia's "Mashed Potatoes Red Potatoes with Garlic & Parmesan" product appears as follows:

Front Panel:

Back Panel:





Northwest Grown Red Potatoes, Roasted Garlic, Parmesan Cheese and Extra Virgin Olive Oil combine beautifully to create this delicious all-natural Mashed Potato recipe – the perfect side dish and complement to any entrée.

Quick and easy to prepare Alexia Mashed Potatoes are also available in another fantastic flavor, Yukon Gold Potatoes & Sea Salt.

28.    The back of the packaging for Alexia's "Mashed Potatoes Red Potatoes with Garlic & Parmesan" further misrepresents the product's "all natural" status, stating, "Northwest Grown Red Potatoes, Roasted Garlic, Parmesan Cheese and Extra Virgin Olive Oil combine beautifully to create this delicious *all-natural* Mashed Potato recipe . . ." (emphasis added).

8

29.  Alexia's misrepresentations concerning the Products are compounded by the representations it makes on its website.  The header of Alexia's website prominently features its "All Natural" claim, as follows:



30.  Additionally, on the website, Alexia makes such misleading statements as "We love food as much as you.  That's why we make it exactly how you would:  *all-natural*, gourmet-inspired, and absolutely delicious" (emphasis added).  See as follows:



9

31.  Other relevant portions of Alexia's website repeat the above misrepresentations, and state, among other things, "Alex started by hand selecting the finest *all-natural* ingredients and producing only small batches making Alexia a hard to find favorite. ... Alex always used *real ingredients* ..." (emphasis added).  This portion of the website appears as follows:



32.  To increase profits from its misrepresentations and encourage consumers like Plaintiff to regularly purchase and consume the Products, as discussed in Paragraph 18 above, Alexia tells consumers to "Try [their] other Alexia *all natural*" products (emphasis added).

### Alexia's Synthetic Chemical Ingredients

33.  Contrary to Alexia's exhaustive and repeated "All Natural" claims about its

1 products, the Products contain the synthetic chemical preservative, disodium dihydrogen
2 pyrophosphate.

3    34.    Plaintiffs are informed and believe, and on that basis, allege that disodium
4 dihydrogen pyrophosphate, an odorless white crystalline powder, which is also known as
5 disodium diphosphate, disodium dihydrogen pyrophosphate, disodium pyrophosphate,
6 and sodium acid pyrophosphate (collectively referred to herein as "disodium dihydrogen
7 pyrophosphate"), is an industrial chemical additive and food preservative.  The chemical
8 formula for disodium dihydrogen pyrophosphate is $H_2Na_2O_7P_2$, and the CAS number for
9 this chemical is 7758-16-9.

10    35.    Plaintiffs are informed and believe, and on that basis, allege that disodium
11 dihydrogen pyrophosphate is used in the leather industry to remove iron stains on hides
12 during processing, and that when added to the scalding water, disodium dihydrogen
13 pyrophosphate is used to remove hair in hog slaughter and feathers in poultry slaughter.
14 Additionally, Plaintiffs are informed and believe, and on that basis, allege that in
15 petroleum industry, disodium dihydrogen pyrophosphate can be used as a dispersant for
16 oil production.

17    36.    Plaintiffs are informed and believe, and on that basis, allege that in the food
18 industry, disodium dihydrogen pyrophosphate is used to color foods and to prevent
19 discoloration in foods.  For example, disodium dihydrogen pyrophosphate is used to color
20 hot dogs in their packaging, and similar to the way Alexia uses it, it is used in
21 commercially packaged hash browns to prevent potatoes from oxidizing and browning.

22    37.    Plaintiffs and other similarly situated reasonable consumers do not expect
23 synthetic chemicals like disodium dihydrogen pyrophosphate to be in a food product that
24 is labeled "All Natural."

25    38.    Alexia is well aware that foods containing synthetic chemicals are not "All
26 Natural."  Indeed, the term "natural" is defined by federal government agencies who
27 regulate companies like Alexia, who manufacture, market, and distribute food products.
28    39.    For example, the United States Food and Drug Administration ("FDA") has

11

1   stated "its policy regarding the use of 'natural,' as meaning that nothing artificial or

2   synthetic (including all color additives regardless of source) has been included in, or has

3   been added to, a food that would not normally be expected to be in the food." 58 F.R.

4   2302 at 2407 (January 6, 1993).

5       40.   Federal regulations define "synthetic" as follows:

6
        Synthetic.  A substance that is formulated or manufactured by a
7       chemical process or by a process that chemically changes a
        substance extracted from naturally occurring plant, animal, or
8       mineral sources, except that such term shall not apply to
        substances created by naturally occurring biological processes.
9

10
    7 C.F.R. § 205.2.
11
        41.   Additionally, the United States Department of Agriculture's Food Safety and
12
    Inspection Service ("FSIS") also defines a "natural" product as a product that does not
13
    contain any artificial or synthetic ingredient and does not contain any ingredient that is
14
    more than "minimally processed," stating that a product may be labeled as "natural" if:
15

16
        (1) the product does not contain any artificial flavor or flavoring,
17      coloring ingredient, or chemical preservative (as defined in 21
        CFR 101.22), or any other artificial or synthetic ingredient; and
18      (2) the product and its ingredients are not more than minimally
        processed. Minimal processing may include: (a) those traditional
19      processes used to make food edible or to preserve it or to make
        it safe for human consumption, e.g., smoking, roasting, freezing,
20      drying, and fermenting, or (b) those physical processes which do
        not fundamentally alter the raw product and/or which only
21      separate a whole, intact food into component parts, e.g.,
        grinding meat, separating eggs into albumen and yolk, and
22      pressing fruits to produce juices.[3]
23

24

25

26

27   _____
     [3] *See* http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited
28   December 1, 2011).

42.   Regardless of these federal laws and regulations, based on Alexia's extensive "All Natural" representations about the Products, reasonable consumers do not expect the Products to contain synthetic preservatives and white crystalline chemical powders like disodium dihydrogen pyrophosphate.

## PLAINTIFFS' CLAIMS AGAINST ALEXIA

43.   Plaintiff Vicuña is a resident of Livermore, which is in Alameda County, California, and Plaintiff Kyle is a resident of Los Angeles, which is in Los Angeles County, California.

44.   Plaintiff Kyle purchased and consumed Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products, believing them to be all-natural.

45.   As discussed in detail in the preceding paragraphs, in connection with Alexia's advertising campaign concerning the Alexia's brand generally and the Products themselves, Plaintiff Kyle saw and relied on Alexia's "All Natural" representations, which were intended to mislead consumers like him to believe that the Products are all-natural, when in fact, they are not.  Plaintiff Kyle relied on Alexia's "All Natural" representations and believed the Products were all-natural.

46.   Plaintiff Vicuña purchased Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products for his own and his family's consumption.  Plaintiff Vicuña believed the Products were all-natural.

47.   As discussed above, in connection with Alexia's advertising campaign concerning the Alexia's brand generally and the Products themselves, Plaintiff Vicuña saw and relied on Alexia's "All Natural" representations, which were intended to mislead consumers like him to believe that the Products are all-natural, when in fact, they are not. Plaintiff Vicuña relied on Alexia's "All Natural" representations and believed the Products were all-natural.

48.   Alexia's "All Natural" representations were material to Plaintiffs and

13

1  members of the Class (as defined below) when they purchased the Products.  Plaintiffs

2  and members of the Class did not receive the benefit of the bargain from their purchases,

3  however, because they paid for "All Natural" products, but the products they actually

4  received from Alexia contained synthetic chemical preservatives, and were not all-natural.

5  Accordingly, Plaintiffs and members of the Class suffered injury in fact and lost money as

6  a result of Alexia's having misrepresented the Products as being "All Natural."  But for

7  Alexia's misrepresentations, Plaintiffs and members of the Class would not have

8  purchased and consumed the Products, rather they would have purchased similar products

9  from one of Alexia's competitors, or they would have paid less for the Products.

## CLASS ACTION ALLEGATIONS

11      49.    Plaintiff brings this action, on behalf of himself and all others similarly

12  situated, as a class action under Rule 23 of the Federal Rules of Civil Procedure.

13      50.    The classes Plaintiffs seek to represent (the collectively the "Class") are

14  defined as follows:

> All residents of California who purchased Alexia's "Sauté
> Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt,"
> and/or "Mashed Potatoes Red Potatoes with Garlic &
> Parmesan" products during the period of December 6, 2007
> continuing through the date of final disposition of this action
> (the "California Statutory Class").

> All residents of the United States of America who purchased
> Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes
> & Sea Salt," and/or "Mashed Potatoes Red Potatoes with Garlic
> & Parmesan" products during the period of December 6, 2007
> continuing through the date of final disposition of this action
> (the "Common Law Class").

      51.    Plaintiff reserves the right to amend the Class definitions if discovery and

further investigation reveals that the Class should be expanded or otherwise modified.

      52.    Plaintiff reserves the right to establish sub-classes as appropriate.

53.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class Members" shall mean and refer to the members of the Class.

54.     Community of Interest:  There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

55.     Numerosity:  While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendant.  At this time, Plaintiff is informed and believes that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

56.     Ascertainablity:  Names and addresses of members of the Class are available from Defendant's records.  Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

57.     Typicality:  Plaintiff's claims are typical of the claims of the other members of the Class which she seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiff and each member of the Class has been subjected to the same deceptive and improper practices and has been damaged in the same manner thereby.

58.     Adequacy:  Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Class, because he has no interests which are adverse to the interests of the members of the Class.  Plaintiff is committed to the

15

vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

59.   Superiority: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)   The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their "negative value" claims other than through the procedure of a class action.

(b)   If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

(c)   Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

60.   Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

61.   The common questions of fact include, but are not limited to, the following:

(a)   Whether Defendant's practice of misleading consumers who purchase Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products violates one or more provisions of the CLRA;

(b)   Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

(c)   Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

(d)   Whether Defendant's conduct was willful or reckless;

16

1   (e)   Whether Plaintiff and members of the Class are entitled to an award of
2         reasonable attorneys' fees, pre-judgment interest, and costs of this suit;
3         and

4   (f)   Whether Defendant engaged in unlawful and unfair business practices
5         in violation of California Business & Professions Code sections 17200
6         *et seq.* and 17500 *et seq.*

7   62.   In the alternative, this action is certifiable under the provisions of Federal
8   Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

9   (a)   The prosecution of separate actions by individual members of the
10        Class would create a risk of inconsistent or varying adjudications with
11        respect to individual members of the Class which would establish
12        incompatible standards of conduct for Defendant.

13  (b)   The prosecution of separate actions by individual members of the
14        Class would create a risk of adjudications as to them which would, as a
15        practical matter, be dispositive of the interests of the other members of
16        the Class not parties to the adjudications, or substantially impair or
17        impede their ability to protect their interests; and

18  (c)   Defendant has acted or refused to act on grounds generally applicable
19        to the Class, thereby making appropriate final injunctive relief or
20        corresponding declaratory relief with respect to the Class as a whole
21        and necessitating that any such relief be extended to members of the
22        Class on a mandatory, class-wide basis.

23  63.   Plaintiffs are not aware of any difficulty which will be encountered in the
24  management of this litigation which should preclude its maintenance as a class action.

25
26
27
28

17

# FIRST CAUSE OF ACTION

## Brought on Behalf of the California Statutory Class

## Violation of the Consumers Legal Remedies Act

## (Cal. Civil Code §§ 1750 *et seq.*)

## For Injunctive Relief Only

64.     Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

65.     Plaintiffs bring this cause of action on behalf of themselves and the other members of the California Statutory Class.

66.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA").  This cause of action does not seek monetary damages at this point, but is limited solely to injunctive relief.  Plaintiffs will amend this Class Action Complaint to seek damages in accordance with the CLRA after providing the Defendant with notice under California Civil Code section 1782.

67.     Plaintiffs and members of the Class are consumers as defined by California Civil Code section 1761(d).  The Products are goods within the meaning of California Civil Code section 1761(a).

68.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the California Statutory Class, which were intended to result in, and did result in, the sale of the Products:

> (5)     Representing that [the Product have]...
> characteristics...[and] uses...which they do not have....
>
> (7)     Representing that [the Product] are of a particular
> standard...if they are of another.
>
> (9)     Advertising goods...with intent not to sell them as
> advertised.

69.     Defendant violated the CRLA by representing and advertising that the

18

1   Products, as discussed above, were "All Natural." Defendant knew, however, that this
2   was not the case and that in reality, the Products contain synthetic chemical preservatives.
3        70.    Concurrent with the filing of the initial Class Action Complaint in this action,
4   Plaintiff filed a Declaration of Venue in accordance with Civil Code section 1780(d).
5        71.    Under Section 1782(d) of the CLRA, Plaintiffs also seek an order enjoining
6   the act and practices described above, restitution of property, and any other relief that the
7   court deems proper.
8        72.    Defendant's conduct is malicious, fraudulent, and wanton, and Defendant
9   intentionally misleads and withholds material information from consumers in order to
10  increase the sale of the Products.
11       73.    Defendant's misrepresentations were material Plaintiffs and members of the
12  Class. Plaintiffs and members of the California Statutory Class would not have purchased
13  and consumed the Products had it not been for Defendant's misrepresentations of material
14  facts, rather they would have purchased other products from Defendant's competitors, or
15  they would have paid less for the Products if they were not represented to be "All
16  Natural." Plaintiffs and members of the California Statutory Class were damaged as a
17  result of Defendant's material misrepresentations.

**SECOND CAUSE OF ACTION**

**Brought on Behalf of the California Statutory Class**

**Violation of Unfair Business Practices Act**

**(California Business & Professions Code §§ 17200 *et seq.*)**

22       74.    Plaintiffs incorporate by reference in this cause of action each and every
23  allegation of the preceding paragraphs, with the same force and effect as though fully set
24  forth herein.
25       75.    Plaintiffs bring this cause of action on behalf of themselves and the other
26  members of the California Statutory Class.
27       76.    California Business and Professions Code section 17200 prohibits "any
28  unlawful, unfair or fraudulent business act or practice." For the reasons described above,

19

CLASS ACTION COMPLAINT

1   Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or practices in
2   violation of California Business and Professions Code section 17200.

3        77.    Defendant's misrepresentations of material facts, as set forth herein,
4   constitute an unlawful practice because they violate California Civil Code sections 1572,
5   1573, 1709, 1710, 1711, and 1770, among others, as well as the common law.

6        78.    Defendant's misrepresentations of material facts, as set forth herein, also
7   constitute "unfair" business acts and practices within the meaning of California Business
8   and Professions Code sections 17200 *et seq.*, in that Defendant's conduct was injurious to
9   consumers, offended public policy, and was unethical and unscrupulous.  Plaintiff also
10  asserts a violation of public policy by withholding material facts from consumers.
11  Defendant's violation of California's consumer protection and unfair competition laws in
12  California resulted in harm to consumers.

13       79.    There were reasonable alternatives available to Defendant to further
14  Defendant's legitimate business interests, other than the conduct described herein.

15       80.    California Business and Professions Code section 17200 also prohibits any
16  "fraudulent business act or practice."

17       81.    Defendant's misrepresentations of material facts, as set forth above, were
18  false, misleading, and/or likely to deceive the public within the meaning of California
19  Business and Professions Code section 17200.

20       82.    Defendant's misrepresentations were made with knowledge of their effect,
21  and were done to induce Plaintiffs and members of the California Statutory Class to
22  purchase the Products.  Plaintiffs and members of the California Statutory Class saw and
23  justifiably relied on Defendant's misrepresentations when purchasing the Products.

24       83.    Defendant's conduct caused and continues to cause injury to Plaintiffs and
25  members of the California Statutory Class.  Defendant's misrepresentations were material
26  Plaintiffs and members of the Class.  Plaintiffs and members of the California Statutory
27  Class would not have purchased and consumed the Products had it not been for
28  Defendant's misrepresentations of material facts.  Plaintiffs and members of the

20

California Statutory Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.

84.    Plaintiffs and members of the California Statutory Class would not have purchased and consumed the Products had it not been for Defendant's misrepresentations of material facts.  Defendant's misrepresentations alleged herein are objectively material to the reasonable consumer.  Reliance upon the misrepresentations discussed herein may therefore be presumed as a matter of law.  The materiality of such representations also establishes causation between Defendant's conduct and Plaintiffs' and the members of the California Statutory Class' injuries

85.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and members of the California Statutory Class to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

86.    Additionally, under Business and Professions Code section 17203, Plaintiffs and members of the California Statutory Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendant to correct its actions.

## THIRD CAUSE OF ACTION

### Brought on Behalf of the California Statutory Class

### Violation of False Advertising Law

### (California Business & Professions Code §§ 17500 *et seq.*)

87.    Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

88.    Plaintiffs bring this cause of action on behalf of themselves and the other members of the California Statutory Class.

89.    California Business and Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

90.    Defendant violated California Business and Professions Code section 17500

21

1  by, *inter alia*, misleadingly advertising that the Products are "All Natural," when in fact,

2  they are not.

3      91.    Defendant's deceptive practices were specifically designed allow Defendant

4  to command a premium price for the Products, and to induce Plaintiffs and members of

5  the California Statutory Class to purchase the Products over those of Defendant's

6  competitors. Defendant's deceptive practices were carried out on the packaging for the

7  Products, in print, on-line, on Defendant's website, and other broad-based media, in order

8  to induce Plaintiffs and members of the California Statutory Class to purchase the

9  Products.

10      92.    Plaintiffs and members of the California Statutory Class would not have

11  purchased and consumed the Products had it not been for Defendant's misrepresentations

12  of material facts. Plaintiffs and members of the California Statutory Class were denied

13  the benefit of the bargain when they decided to purchase the Products over competitor

14  products, which are less expensive or actually contain all-natural ingredients, or they do

15  not unlawfully claim to be all natural. Had Plaintiffs and members of the California

16  Statutory Class been aware of Alexia's false and misleading advertising tactics, they

17  would have paid less than what they paid for the Products, or they would not have

18  purchased the Products at all

19      93.    The content of the advertisements, as alleged herein, were of a nature likely

20  to deceive a reasonable consumer.

21      94.    Defendant knew, or in the exercise of reasonable care, should have known,

22  that the representations were untrue or misleading and likely to deceive reasonable

23  consumers.

24      95.    Defendant's misrepresentations alleged herein are objectively material to the

25  reasonable consumer, and reliance upon such misrepresentations may therefore be

26  presumed as a matter of law. The materiality of such representations also establishes

27  causation between Defendant's conduct and Plaintiffs' and the members of the California

28  Statutory Class' injuries.

CLASS ACTION COMPLAINT

96.   Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code section 17500.

97.   As a result of the foregoing, Plaintiffs and members of the California Statutory Class have been injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

## FOURTH CAUSE OF ACTION

### Brought on Behalf of the Common Law Class

### Breach of Express Warranty

98.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

99.   Plaintiffs bring this cause of action on behalf of themselves and the members of the Common Law Class.

100.   In selling the Products as "All Natural," Defendant made promises and affirmations of fact on the Products' packaging and through the marketing and advertising, as described above.  This marketing and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiffs and members of the Common Law Class and Defendant.

101.   Defendant purports through its advertising to create express warranties of the Products as all-natural by making the affirmation of fact, and promising that the Products are "All Natural."

102.   Despite express warranties about the "All Natural" nature of the Products, the Products contain the synthetic chemical preservative disodium dihydrogen pyrophosphate.

103.   Defendant breached express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises to be "All Natural."

104.   As a result of Defendant's breach of express warranty, Plaintiff and members

23

1  of the Common Law Class were harmed in the amount of the purchase price they paid for

2  the Products.

### FIFTH CAUSE OF ACTION

#### Brought on Behalf of the Common Law Class

#### Negligent Misrepresentation

6      105.  Plaintiffs incorporate by reference in this cause of action each and every

7  allegation of the preceding paragraphs, with the same force and effect as though fully set

8  forth herein.

9      106.  Plaintiffs bring this cause of action on behalf of themselves and the members

10  of the Common Law Class.

11      107.  Defendant, directly or through its agents and employees, made false

12  representations to Plaintiffs and members of the Common Law Class.

13      108.  In making the representations of fact to Plaintiffs and members of the

14  Common Law Class described herein, Defendant has failed to fulfill its duties to disclose

15  the material facts set forth above.  The direct and proximate cause of said failure to

16  disclose was the negligence and carelessness of Defendant.

17      109.  In making the representations, and in doing the acts alleged above, Defendant

18  acted without any reasonable grounds for believing the representations were true, and

19  intended by said representations to induce the reliance of Plaintiffs and members of the

20  Common Law Class.

21      110.  Plaintiffs and members of the Common Law Class relied upon these false

22  representations by Defendant when purchasing the products at issue herein, which

23  reliance was justified.

24      111.  As a result of Defendant's wrongful conduct, Plaintiffs and members of the

25  Common Law Class have suffered and continue to suffer economic losses and other

26  general and specific damages, including but not limited to the amounts paid for the

27  Products, and any interest that would have been accrued on those monies, all in an amount

28  to be determined according to proof at time of trial.

24

## SIXTH CAUSE OF ACTION

### Brought on Behalf of the Common Law Class

### Unjust Enrichment

112.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

113.   Plaintiffs bring this cause of action on behalf of themselves and the members of the Common Law Class.

114.   By its wrongful acts and misrepresentations, Defendant was unjustly enriched at the expense of Plaintiffs and members of the Common Law Class, who did not receive the goods to which they were entitled—namely products that did not contain synthetic chemical preservatives—for the payments made to Defendant, and thus, Plaintiffs and members of the Common Law Class were unjustly deprived.

115.   It would be inequitable and unconscionable for Defendant to retain the profit, benefit and other compensation it obtained from its deceptive, misleading, and unlawful conduct alleged herein.

116.   Plaintiffs and members of the Common Law Class seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

### PRAYER FOR RELIEF

Plaintiffs, and on behalf of themselves and all others similarly situated, requests the Court to enter judgment against Defendant, as follows:

1.   Certifying the Class, including the California Statutory Class and the Common Law Class, as requested herein, certifying Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class;

2.   Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations discussed herein;

3.   Awarding Plaintiffs and the members of the Class compensatory damages in

25

1    an amount according to proof at trial;

2        4.      Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs

3    and members of the Class;

4        5.      Awarding declaratory and injunctive relief as permitted by law or equity,

5    including: enjoining Defendant from continuing the unlawful practices as set forth herein,

6    and directing Defendant to identify, with Court supervision, victims of its conduct and pay

7    them restitution and disgorgement of all monies acquired by Defendant by means of any

8    act or practice declared by this Court to be wrongful;

9        6.      Ordering Defendant to engage in corrective advertising;

10       7.      Awarding interest on the monies wrongfully obtained from the date of

11   collection through the date of entry of judgment in this action;

12       8.      Awarding attorneys' fees, expenses, and recoverable costs reasonably

13   incurred in connection with the commencement and prosecution of this action; and

14       9.      For such other and further relief as the Court deems just and proper.

15

16   Dated: December **5**, 2011            BARON & BUDD, P.C.

17

18                                         By:_____
                                               Mark Pifko
19
                                           Attorneys for Plaintiffs
20
                                           LEANDRO VICUÑA and PERE KYLE,
21                                         individually, and on behalf of other
                                           members of the public similarly situated
22

23

24

25

26

27

28

26

CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2          Plaintiffs hereby demand trial of their claims by jury to the extent authorized by

3     law.

4
      Dated:  December **5**, 2011                    BARON & BUDD, P.C.
5

6

7                                                     By: _____
                                                          Mark Pifko

8                                                     Attorneys for Plaintiffs

9                                                     LEANDRO VICUÑA and PERE KYLE,
                                                      individually, and on behalf of other
10                                                    members of the public similarly situated

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT