1  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
2  Mark Pifko (SBN 228412)
   mpifko@baronbudd.com
3  Natasha Mehta (SBN 272241)
   nmehta@baronbudd.com
4  BARON & BUDD, P.C.
   1999 Avenue of the Stars, Suite 3450
5  Los Angeles, California 90067
   Telephone:  (310) 860-0476
6  Facsimile:   (310) 860-0480

7  Attorneys for Plaintiffs

8  LEANDRO VICUÑA and PERE KYLE,
   individually, and on behalf of other members of
9  the public similarly situated

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

14  LEANDRO VICUÑA and PERE KYLE,        Case Number:  4:11-cv-06119-PJH
    individually, and on behalf of other
15  members of the general public similarly   **CLASS ACTION**
    situated,
16                                            **FIRST AMENDED COMPLAINT**
17              Plaintiffs,                    **FOR:**

18          vs.
                                              (1)    Violation of the Consumers Legal
19                                            Remedies Act (Cal. Civ. Code §§ 1750 *et*
    ALEXIA FOODS, INC., a Delaware            *seq.*);
20  Corporation,
                                              (2)    Violation of Unfair Competition
21                                            Law (Cal. Bus. & Prof. Code §§ 17200 *et*
              Defendant.                      *seq.*);
22
                                              (3)    Violation of False Advertising Law
23                                            (Cal. Bus. & Prof. Code §§ 17500 *et*
                                              *seq.*);
24
                                              (4)    Breach of Express Warranty;
25
                                              (5)    Negligent Misrepresentation; and
26
                                              (6)    Unjust Enrichment
27
28                                            **Jury Trial Demanded**

1       Plaintiffs LEANDRO VICUÑA and PERE KYLE ("Plaintiffs"), individually and

2 on behalf of all other members of the public similarly situated, allege as follows:

3 **NATURE OF THE ACTION**

4     1.     This is a consumer class action regarding Defendant Alexia Foods, Inc.'s

5 unfair, unlawful, deceptive, and misleading practices conducted in violation of California

6 state law, and common law.  This action involves "Sauté Reds," "Mashed Potatoes Yukon

7 Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan"

8 frozen potato products (the "Products") that are manufactured and marketed by Defendant

9 Alexia Foods, Inc. ("Defendant" or "Alexia").

10     2.     In connection with its marketing of the Products and its brand generally,

11 including communications made through product packaging, in print, on television, at

12 public events, promotions, on the company's website, and other media, Alexia makes

13 representations that are intended to mislead consumers to believe that the Products are

14 "All Natural" or "Natural," when in fact, they contain the synthetic chemical preservative

15 disodium dihydrogen pyrophosphate.

16     3.     Alexia's "All Natural" labeling is central to the company's marketing of the

17 Products, and as a result, Alexia commands a premium price for the Products, using "All

18 Natural" claims to distinguish the Products from its competitors' products.

19     4.     Alexia's misrepresentations about the Products bombard consumers with a

20 message of being all-natural, and draw consumer attention away from the fact that the

21 Products contain synthetic chemicals.  Indeed, reasonable consumers like Plaintiffs do not

22 believe synthetic chemical ingredients like disodium dihydrogen pyrophosphate are in the

23 Products, which are prominently represented to be "All Natural."  Accordingly, Alexia's

24 marketing and representations are likely to deceive reasonable consumers, and did in fact,

25 deceive Plaintiffs.

26     5.     Plaintiffs and members of the Class, as defined below, relied on Alexia's

27 "All Natural" representations, and they were material to Plaintiffs and members of the

28 Class, when they purchased the Products.  Therefore, Plaintiffs and members of the Class

1  were damaged because they paid for products that were expressly represented to be "All-

2  Natural," but when they purchased the Products, they received products with synthetic

3  chemicals that were not all-natural.

4      6.     Alexia's consumer deception is both knowing and willful.  Alexia knows

5  what representations it made on the Products – indeed, "All Natural" is prominently

6  featured on practically all of the company's products.  As the manufacturer of the

7  Products, Alexia also knew what ingredients were added to the Products.  Alexia knew, or

8  should have known, that federal laws and regulations define "natural" as excluding

9  synthetic chemicals, and that reasonable consumers understand the word "natural" to

10  exclude synthetic substances like disodium dihydrogen pyrophosphate.

11      7.     Reasonable consumers like Plaintiffs should not be forced to look beyond the

12  misleading representations, which are prominently featured on the Products' packaging,

13  marketing, advertising, and promotional materials, to try and discover the truth from a list

14  of confusing and scientifically complex ingredients identified in small print on the back of

15  the label.  Instead, reasonable consumers should be able to trust that Alexia's

16  representations are consistent with the ingredient list, and not the opposite, as is the case

17  with Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and

18  "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products.

19      8.     Alexia's false and misleading representations violate state law, as detailed

20  below, including California's Unfair Competition Law, False Advertising Law,

21  Consumers Legal Remedies Act, and the common law.

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

9.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendant.  Further, greater than two-thirds of the Class Members reside in states other than the states in which Defendant is a citizen.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiffs ordinarily would expect to try them in one judicial proceeding.

10.     Venue lies within this judicial district under 28 U.S.C. § 1391(a) and (c) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue.

**Intradistrict Assignment**

11.     Consistent with Northern District of California Civil Local Rule 3-5(b), assignment to the San Francisco or Oakland Division is appropriate under Civil Local Rules 3-2(c) and 3-2(d), because acts giving rise to the claims at issue in this Complaint occurred, among other places in this district, in Alameda County.

**PARTIES**

12.     Plaintiff Pere Kyle, an individual, is a citizen of California.

13.     Plaintiff Leandro Vicuña, an individual, is a citizen of California.

14.     Defendant Alexia Foods, Inc. is a Delaware corporation, with its principal place of business located at 51-02 21st Street, #3B, Long Island City, New York  11101, and therefore, Alexia is a citizen of Delaware and New York.

15.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

FIRST AMENDED CLASS ACTION COMPLAINT

## FACTUAL BACKGROUND

16.   Alexia claims, "Alexia Foods produces an all-natural, trans-fat free line of frozen products for the natural and specialty food consumer . . ."[1] It further claims, "The Alexia Foods portfolio currently includes the No. 1 selling line of *natural* frozen potatoes . . ." (emphasis added).[2]

17.   Alexia's "All Natural" claim is incorporated into the company's primary branding, which appears as follows:



18.   Alexia's branding also includes the following "All Natural" claims:











Italian Sauté            Sauté Sweets            Harvest Sauté

---

[1] *See* News Release, November 6, 2007, "Alexia Foods Serves Up All Natural, Stress-Free Alternatives to Traditional Holiday Fare" available at:
http://investor.conagrafoods.com/phoenix.zhtml?c=202310&p=irol-newsArticle_pf&ID=1073405&highlight= (last visited November 30, 2011).

[2] *See* Press Release, November 2009, "Alexia Foods Makes Simple Foods Extraordinary" available at:
http://www.alexiafoods.com/downloads/Alexia_Press_Release.pdf (last visited, November 30, 2011).

4

19.     Alexia's "All Natural" claim is featured in the company's coupons:



20.     Alexia also prominently features its "All Natural" branding at events and promotions, including as follows:



5

### Alexia's "All Natural" Sauté Reds

21.   Alexia sells "Sauté Reds."  Alexia claims that its "Sauté Reds" product is "All Natural."

22.   The packaging of Alexia's "Sauté Reds" product appears as follows:

Front Panel:                                                    Rear Panel:





The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, all natural ingredients and herb-infused 100% olive oil.

Our Sauté Reds are a delicious blend of roasted red potatoes, baby portabella mushrooms, whole green beans and sweet Spanish onions, with a thyme-infused 100% olive oil seasoning packet.

As an accompaniment to your favorite entrée, quick and easy to prepare Alexia Select Sides complement any dining occasion.

23.   The back of the packaging for Alexia's "Sauté Reds" further misrepresents the product's "all natural" status, stating, "The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, *all natural* ingredients . . ." (emphasis added).

**Alexia's "All Natural" Mashed Potatoes Yukon Gold Potatoes & Sea Salt**

24.     Alexia also sells "Mashed Potatoes Yukon Gold Potatoes & Sea Salt." Alexia claims that its "Mashed Potatoes Yukon Gold Potatoes & Sea Salt" product is "All Natural."

25.     The packaging of Alexia's "Mashed Potatoes Yukon Gold Potatoes & Sea Salt" product appears as follows:

Front Panel:                                        Rear Panel:





Yukon Gold potatoes are lightly seasoned with Sea Salt to create this creamy and delicious mashed potato recipe that is simple yet sublime. This perfect blend completes any dining occasion.

Quick and easy to prepare Alexia Mashed Potatoes are also available in another fantastic flavor, Red Potatoes with Garlic & Parmesan.

7

1    **Alexia's "All Natural" Mashed Potatoes Red Potatoes with Garlic & Parmesan**

2    26.    Alexia also sells "Mashed Potatoes Red Potatoes with Garlic & Parmesan."

3    Alexia claims that its "Mashed Potatoes Red Potatoes with Garlic & Parmesan" product is

4    "All Natural."

5    27.    The packaging of Alexia's "Mashed Potatoes Red Potatoes with Garlic &

6    Parmesan" product appears as follows:

7                    Front Panel:                                    Back Panel:

8

9

10                                                          

11                                                          Northwest Grown Red Potatoes,
                                                            Roasted Garlic, Parmesan Cheese and
12                                      Extra Virgin Olive Oil combine
                                                            beautifully to create this delicious
13                                                          all-natural Mashed Potato recipe – the
                                                            perfect side dish and complement to any
14                                                          entrée.

15                                                          Quick and easy to prepare Alexia
                                                            Mashed Potatoes are also available in
16                                                          another fantastic flavor, Yukon Gold
                                                            Potatoes & Sea Salt.

17

18

19

20

21

22

23    28.    The back of the packaging for Alexia's "Mashed Potatoes Red Potatoes with

24    Garlic & Parmesan" further misrepresents the product's "all natural" status, stating,

25    "Northwest Grown Red Potatoes, Roasted Garlic, Parmesan Cheese and Extra Virgin

26    Olive Oil combine beautifully to create this delicious *all-natural* Mashed Potato

27    recipe . . ." (emphasis added).

28

FIRST AMENDED CLASS ACTION COMPLAINT

29.     Alexia's misrepresentations concerning the Products are compounded by the representations it makes on its website.  The header of Alexia's website prominently features its "All Natural" claim, as follows:



30.     Additionally, on the website, Alexia makes such misleading statements as "We love food as much as you.  That's why we make it exactly how you would:  *all-natural*, gourmet-inspired, and absolutely delicious" (emphasis added).  See as follows:



First Amended Class Action Complaint

31.     Other relevant portions of Alexia's website repeat the above misrepresentations, and state, among other things, "Alex started by hand selecting the finest *all-natural* ingredients and producing only small batches making Alexia a hard to find favorite. . . . Alex always used *real ingredients* . . ." (emphasis added).  This portion of the website appears as follows:



32.     To increase profits from its misrepresentations and encourage consumers like Plaintiff to regularly purchase and consume the Products, as discussed in Paragraph 18 above, Alexia tells consumers to "Try [their] other Alexia *all natural*" products (emphasis added).

### Alexia's Synthetic Chemical Ingredients

33.     Contrary to Alexia's exhaustive and repeated "All Natural" claims about its

products, the Products contain the synthetic chemical preservative, disodium dihydrogen pyrophosphate.

34.     Plaintiffs are informed and believe, and on that basis, allege that disodium dihydrogen pyrophosphate, an odorless white crystalline powder, which is also known as disodium diphosphate, disodium dihydrogen pyrophosphate, disodium pyrophosphate, and sodium acid pyrophosphate (collectively referred to herein as "disodium dihydrogen pyrophosphate"), is an industrial chemical additive and food preservative.  The chemical formula for disodium dihydrogen pyrophosphate is $H_2Na_2O_7P_2$, and the CAS number for this chemical is 7758-16-9.

35.     Plaintiffs are informed and believe, and on that basis, allege that disodium dihydrogen pyrophosphate is used in the leather industry to remove iron stains on hides during processing, and that when added to the scalding water, disodium dihydrogen pyrophosphate is used to remove hair in hog slaughter and feathers in poultry slaughter. Additionally, Plaintiffs are informed and believe, and on that basis, allege that in petroleum industry, disodium dihydrogen pyrophosphate can be used as a dispersant for oil production.

36.     Plaintiffs are informed and believe, and on that basis, allege that in the food industry, disodium dihydrogen pyrophosphate is used to color foods and to prevent discoloration in foods.  For example, disodium dihydrogen pyrophosphate is used to color hot dogs in their packaging, and similar to the way Alexia uses it, it is used in commercially packaged hash browns to prevent potatoes from oxidizing and browning.

37.     Plaintiffs and other similarly situated reasonable consumers do not expect synthetic chemicals like disodium dihydrogen pyrophosphate to be in a food product that is labeled "All Natural."

38.     Alexia is well aware that foods containing synthetic chemicals are not "All Natural."  Indeed, the term "natural" is defined by federal government agencies who regulate companies like Alexia, who manufacture, market, and distribute food products.

39.     For example, the United States Food and Drug Administration ("FDA") has

11

stated "its policy regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 F.R. 2302 at 2407 (January 6, 1993).

40.    Federal regulations define "synthetic" as follows:

> Synthetic.  A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

7 C.F.R. § 205.2.

41.    Additionally, the United States Department of Agriculture's Food Safety and Inspection Service ("FSIS") also defines a "natural" product as a product that does not contain any artificial or synthetic ingredient and does not contain any ingredient that is more than "minimally processed," stating that a product may be labeled as "natural" if:

> (1) the product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than minimally processed. Minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.[3]

---

[3] *See* http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited December 1, 2011).

FIRST AMENDED CLASS ACTION COMPLAINT

42.     Regardless of these federal laws and regulations, based on Alexia's extensive "All Natural" representations about the Products, reasonable consumers do not expect the Products to contain synthetic preservatives and white crystalline chemical powders like disodium dihydrogen pyrophosphate.

## PLAINTIFFS' CLAIMS AGAINST ALEXIA

43.     Plaintiff Vicuña is a resident of Livermore, which is in Alameda County, California, and Plaintiff Kyle is a resident of Los Angeles, which is in Los Angeles County, California.

44.     Plaintiff Kyle purchased and consumed Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products, believing them to be all-natural.

45.     As discussed in detail in the preceding paragraphs, in connection with Alexia's advertising campaign concerning the Alexia's brand generally and the Products themselves, Plaintiff Kyle saw and relied on Alexia's "All Natural" representations, which were intended to mislead consumers like him to believe that the Products are all-natural, when in fact, they are not.  Plaintiff Kyle relied on Alexia's "All Natural" representations and believed the Products were all-natural.

46.     Plaintiff Vicuña purchased Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products for his own and his family's consumption.  Plaintiff Vicuña believed the Products were all-natural.

47.     As discussed above, in connection with Alexia's advertising campaign concerning the Alexia's brand generally and the Products themselves, Plaintiff Vicuña saw and relied on Alexia's "All Natural" representations, which were intended to mislead consumers like him to believe that the Products are all-natural, when in fact, they are not. Plaintiff Vicuña relied on Alexia's "All Natural" representations and believed the Products were all-natural.

48.     Alexia's "All Natural" representations were material to Plaintiffs and

members of the Class (as defined below) when they purchased the Products.  Plaintiffs

and members of the Class did not receive the benefit of the bargain from their purchases,

however, because they paid for "All Natural" products, but the products they actually

received from Alexia contained synthetic chemical preservatives, and were not all-natural.

Accordingly, Plaintiffs and members of the Class suffered injury in fact and lost money as

a result of Alexia's having misrepresented the Products as being "All Natural."  But for

Alexia's misrepresentations, Plaintiffs and members of the Class would not have

purchased and consumed the Products, rather they would have purchased similar products

from one of Alexia's competitors, or they would have paid less for the Products.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action, on behalf of himself and all others similarly

situated, as a class action under Rule 23 of the Federal Rules of Civil Procedure.

50.     The classes Plaintiffs seek to represent (the collectively the "Class") are

defined as follows:

> All residents of California who purchased Alexia's "Sauté
> Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt,"
> and/or "Mashed Potatoes Red Potatoes with Garlic &
> Parmesan" products during the period of December 6, 2007
> continuing through the date of final disposition of this action
> (the "California Statutory Class").

> All residents of the United States of America who purchased
> Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes
> & Sea Salt," and/or "Mashed Potatoes Red Potatoes with Garlic
> & Parmesan" products during the period of December 6, 2007
> continuing through the date of final disposition of this action
> (the "Common Law Class").

51.     Plaintiff reserves the right to amend the Class definitions if discovery and

further investigation reveals that the Class should be expanded or otherwise modified.

52.     Plaintiff reserves the right to establish sub-classes as appropriate.

14

53.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class Members" shall mean and refer to the members of the Class.

54.     Community of Interest:  There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

55.     Numerosity:  While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendant.  At this time, Plaintiff is informed and believes that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

56.     Ascertainablity:  Names and addresses of members of the Class are available from Defendant's records.  Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

57.     Typicality:  Plaintiff's claims are typical of the claims of the other members of the Class which she seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiff and each member of the Class has been subjected to the same deceptive and improper practices and has been damaged in the same manner thereby.

58.     Adequacy:  Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Class, because he has no interests which are adverse to the interests of the members of the Class.  Plaintiff is committed to the

15

1   vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are

2   competent and experienced in handling class action litigation on behalf of consumers.

3         59.   <u>Superiority</u>: A class action is superior to all other available methods of the

4   fair and efficient adjudication of the claims asserted in this action under Federal Rule of

5   Civil Procedure 23(b)(3) because:

6               (a)   The expense and burden of individual litigation make it economically

7                     unfeasible for members of the Class to seek to redress their "negative

8                     value" claims other than through the procedure of a class action.

9               (b)   If separate actions were brought by individual members of the Class,

10                    the resulting duplicity of lawsuits would cause members to seek to

11                    redress their "negative value" claims other than through the procedure

12                    of a class action; and

13               (c)   Absent a class action, Defendant likely would retain the benefits of its

14                    wrongdoing, and there would be a failure of justice.

15         60.   Common questions of law and fact exist as to the members of the Class, as

16   required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions

17   which affect individual members of the Class within the meaning of Federal Rule of Civil

18   Procedure 23(b)(3).

19         61.   The common questions of fact include, but are not limited to, the following:

20               (a)   Whether Defendant's practice of misleading consumers who purchase

21                    Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea

22                    Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan"

23                    products violates one or more provisions of the CLRA;

24               (b)   Whether Defendant engaged in unlawful, unfair, misleading, or

25                    deceptive business acts or practices;

26               (c)   Whether Defendant engaged in consumer fraud, deceptive trade

27                    practices, or other unlawful acts;

28              (d)   Whether Defendant's conduct was willful or reckless;

FIRST AMENDED CLASS ACTION COMPLAINT

(e)     Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit; and

(f)     Whether Defendant engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200 *et seq.* and 17500 *et seq.*

62.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant.

(b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

63.     Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

FIRST AMENDED CLASS ACTION COMPLAINT

# FIRST CAUSE OF ACTION

## Brought on Behalf of the California Statutory Class

## Violation of the Consumers Legal Remedies Act

### (Cal. Civil Code §§ 1750 *et seq.*)

64.     Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

65.     Plaintiffs bring this cause of action on behalf of themselves and the other members of the California Statutory Class.

66.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA").  Plaintiffs and members of the Class are consumers as defined by California Civil Code section 1761(d).  The Products are goods within the meaning of California Civil Code section 1761(a).

67.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the California Statutory Class, which were intended to result in, and did result in, the sale of the Products:

> (5)     Representing that [the Product have]…
> characteristics…[and] uses…which they do not have….

> (7)     Representing that [the Product] are of a particular
> standard…if they are of another.

> (9)     Advertising goods…with intent not to sell them as
> advertised.

68.     Defendant violated the CRLA by representing and advertising that the Products, as discussed above, were "All Natural."  Defendant knew, however, that this was not the case and that in reality, the Products contain synthetic chemical preservatives.

69.     On December 5, 2011, via certified mail, return receipt requested, under Section 1782 of the CLRA Plaintiff Vicuña notified Defendant in writing of the particular violations of Section 1770, and demanded that Defendant rectify the problems associated

with the behavior detailed above, which acts and practices are in violation of Section 1770.

70.    Defendant failed to rectify the violations identified by Plaintiff Vicuña. Therefore, under Section 1780(a) of the CLRA, Plaintiff Vicuña and members of the Class seek actual and punitive damages.

71.    Concurrent with the filing of the initial Class Action Complaint in this action, Plaintiff filed a Declaration of Venue in accordance with Civil Code section 1780(d).

72.    Under Section 1782(d) of the CLRA, Plaintiffs also seek an order enjoining the act and practices described above, restitution of property, and any other relief that the court deems proper.

73.    Defendant's conduct is malicious, fraudulent, and wanton, and Defendant intentionally misleads and withholds material information from consumers in order to increase the sale of the Products.

74.    Defendant's misrepresentations were material Plaintiffs and members of the Class.  Plaintiffs and members of the California Statutory Class would not have purchased and consumed the Products had it not been for Defendant's misrepresentations of material facts, rather they would have purchased other products from Defendant's competitors, or they would have paid less for the Products if they were not represented to be "All Natural."  Plaintiffs and members of the California Statutory Class were damaged as a result of Defendant's material misrepresentations.

## SECOND CAUSE OF ACTION

### Brought on Behalf of the California Statutory Class

### Violation of Unfair Business Practices Act

### (California Business & Professions Code §§ 17200 *et seq.*)

75.    Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

76.    Plaintiffs bring this cause of action on behalf of themselves and the other

1   members of the California Statutory Class.

2       77.   California Business and Professions Code section 17200 prohibits "any

3   unlawful, unfair or fraudulent business act or practice." For the reasons described above,

4   Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or practices in

5   violation of California Business and Professions Code section 17200.

6       78.   Defendant's misrepresentations of material facts, as set forth herein,

7   constitute an unlawful practice because they violate California Civil Code sections 1572,

8   1573, 1709, 1710, 1711, and 1770, among others, as well as the common law.

9       79.   Defendant's misrepresentations of material facts, as set forth herein, also

10  constitute "unfair" business acts and practices within the meaning of California Business

11  and Professions Code sections 17200 *et seq.*, in that Defendant's conduct was injurious to

12  consumers, offended public policy, and was unethical and unscrupulous. Plaintiff also

13  asserts a violation of public policy by withholding material facts from consumers.

14  Defendant's violation of California's consumer protection and unfair competition laws in

15  California resulted in harm to consumers.

16      80.   There were reasonable alternatives available to Defendant to further

17  Defendant's legitimate business interests, other than the conduct described herein.

18      81.   California Business and Professions Code section 17200 also prohibits any

19  "fraudulent business act or practice."

20      82.   Defendant's misrepresentations of material facts, as set forth above, were

21  false, misleading, and/or likely to deceive the public within the meaning of California

22  Business and Professions Code section 17200.

23      83.   Defendant's misrepresentations were made with knowledge of their effect,

24  and were done to induce Plaintiffs and members of the California Statutory Class to

25  purchase the Products. Plaintiffs and members of the California Statutory Class saw and

26  justifiably relied on Defendant's misrepresentations when purchasing the Products.

27      84.   Defendant's conduct caused and continues to cause injury to Plaintiffs and

28  members of the California Statutory Class. Defendant's misrepresentations were material

Plaintiffs and members of the Class.  Plaintiffs and members of the California Statutory

Class would not have purchased and consumed the Products had it not been for

Defendant's misrepresentations of material facts.  Plaintiffs and members of the

California Statutory Class have suffered injury in fact and have lost money as a result of

Defendant's fraudulent conduct.

85.     Plaintiffs and members of the California Statutory Class would not have

purchased and consumed the Products had it not been for Defendant's misrepresentations

of material facts.  Defendant's misrepresentations alleged herein are objectively material

to the reasonable consumer.  Reliance upon the misrepresentations discussed herein may

therefore be presumed as a matter of law.  The materiality of such representations also

establishes causation between Defendant's conduct and Plaintiffs' and the members of the

California Statutory Class' injuries

86.     Defendant has thus engaged in unlawful, unfair, and fraudulent business acts

entitling Plaintiffs and members of the California Statutory Class to judgment and

equitable relief against Defendants, as set forth in the Prayer for Relief.

87.     Additionally, under Business and Professions Code section 17203, Plaintiffs

and members of the California Statutory Class seek an order requiring Defendant to

immediately cease such acts of unlawful, unfair, and fraudulent business practices, and

requiring Defendant to correct its actions.

### THIRD CAUSE OF ACTION

**Brought on Behalf of the California Statutory Class**

**Violation of False Advertising Law**

**(California Business & Professions Code §§ 17500 *et seq.*)**

88.     Plaintiffs incorporate by reference in this cause of action each and every

allegation of the preceding paragraphs, with the same force and effect as though fully set

forth herein.

89.     Plaintiffs bring this cause of action on behalf of themselves and the other

members of the California Statutory Class.

21

90.     California Business and Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

91.     Defendant violated California Business and Professions Code section 17500 by, *inter alia*, misleadingly advertising that the Products are "All Natural," when in fact, they are not.

92.     Defendant's deceptive practices were specifically designed allow Defendant to command a premium price for the Products, and to induce Plaintiffs and members of the California Statutory Class to purchase the Products over those of Defendant's competitors. Defendant's deceptive practices were carried out on the packaging for the Products, in print, on-line, on Defendant's website, and other broad-based media, in order to induce Plaintiffs and members of the California Statutory Class to purchase the Products.

93.     Plaintiffs and members of the California Statutory Class would not have purchased and consumed the Products had it not been for Defendant's misrepresentations of material facts. Plaintiffs and members of the California Statutory Class were denied the benefit of the bargain when they decided to purchase the Products over competitor products, which are less expensive or actually contain all-natural ingredients, or they do not unlawfully claim to be all natural. Had Plaintiffs and members of the California Statutory Class been aware of Alexia's false and misleading advertising tactics, they would have paid less than what they paid for the Products, or they would not have purchased the Products at all

94.     The content of the advertisements, as alleged herein, were of a nature likely to deceive a reasonable consumer.

95.     Defendant knew, or in the exercise of reasonable care, should have known, that the representations were untrue or misleading and likely to deceive reasonable consumers.

96.     Defendant's misrepresentations alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations may therefore be

presumed as a matter of law.  The materiality of such representations also establishes

causation between Defendant's conduct and Plaintiffs' and the members of the California

Statutory Class' injuries.

97.   Unless restrained by this Court, Defendant will continue to engage in

misleading advertising, as alleged above, in violation of California Business and

Professions Code section 17500.

98.   As a result of the foregoing, Plaintiffs and members of the California

Statutory Class have been injured in fact and lost money or property, and they are entitled

to restitution and injunctive relief.

### FOURTH CAUSE OF ACTION

### Brought on Behalf of the Common Law Class

### Breach of Express Warranty

99.   Plaintiffs incorporate by reference in this cause of action each and every

allegation of the preceding paragraphs, with the same force and effect as though fully set

forth herein.

100.   Plaintiffs bring this cause of action on behalf of themselves and the members

of the Common Law Class.

101.   In selling the Products as "All Natural," Defendant made promises and

affirmations of fact on the Products' packaging and through the marketing and

advertising, as described above.  This marketing and advertising constitutes express

warranties and became part of the basis of the bargain between Plaintiffs and members of

the Common Law Class and Defendant.

102.   Defendant purports through its advertising to create express warranties of the

Products as all-natural by making the affirmation of fact, and promising that the Products

are "All Natural."

103.   Despite express warranties about the "All Natural" nature of the Products, the

Products contain the synthetic chemical preservative disodium dihydrogen pyrophosphate.

104.   Defendant breached express warranties about the Products and their qualities

23

because the Products do not conform to Defendant's affirmations and promises to be "All Natural."

105.   As a result of Defendant's breach of express warranty, Plaintiff and members of the Common Law Class were harmed in the amount of the purchase price they paid for the Products.

## FIFTH CAUSE OF ACTION

### Brought on Behalf of the Common Law Class

### Negligent Misrepresentation

106.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

107.   Plaintiffs bring this cause of action on behalf of themselves and the members of the Common Law Class.

108.   Defendant, directly or through its agents and employees, made false representations to Plaintiffs and members of the Common Law Class.

109.   In making the representations of fact to Plaintiffs and members of the Common Law Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of said failure to disclose was the negligence and carelessness of Defendant.

110.   In making the representations, and in doing the acts alleged above, Defendant acted without any reasonable grounds for believing the representations were true, and intended by said representations to induce the reliance of Plaintiffs and members of the Common Law Class.

111.   Plaintiffs and members of the Common Law Class relied upon these false representations by Defendant when purchasing the products at issue herein, which reliance was justified.

112.   As a result of Defendant's wrongful conduct, Plaintiffs and members of the Common Law Class have suffered and continue to suffer economic losses and other

general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## SIXTH CAUSE OF ACTION

### Brought on Behalf of the Common Law Class

### Unjust Enrichment

113.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

114.   Plaintiffs bring this cause of action on behalf of themselves and the members of the Common Law Class.

115.   By its wrongful acts and misrepresentations, Defendant was unjustly enriched at the expense of Plaintiffs and members of the Common Law Class, who did not receive the goods to which they were entitled—namely products that did not contain synthetic chemical preservatives—for the payments made to Defendant, and thus, Plaintiffs and members of the Common Law Class were unjustly deprived.

116.   It would be inequitable and unconscionable for Defendant to retain the profit, benefit and other compensation it obtained from its deceptive, misleading, and unlawful conduct alleged herein.

117.   Plaintiffs and members of the Common Law Class seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## PRAYER FOR RELIEF

Plaintiffs, and on behalf of themselves and all others similarly situated, requests the Court to enter judgment against Defendant, as follows:

1.   Certifying the Class, including the California Statutory Class and the Common Law Class, as requested herein, certifying Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class;

2. Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations discussed herein;

3. Awarding Plaintiffs and the members of the Class compensatory damages in an amount according to proof at trial;

4. Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and members of the Class;

5. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

6. Awarding to Plaintiff and the Class punitive damages;

7. Ordering Defendant to engage in corrective advertising;

8. Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9. Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10. For such other and further relief as the Court deems just and proper.

Dated: January 25, 2012

BARON & BUDD, P.C.

By: _____
Mark Pifko

Attorneys for Plaintiffs

LEANDRO VICUÑA and PERE KYLE,
individually, and on behalf of other
members of the public similarly situated

FIRST AMENDED CLASS ACTION COMPLAINT

## __DEMAND FOR JURY TRIAL__

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

Dated:  January 25, 2012

BARON & BUDD, P.C.

By: _____
     Mark Pifko

Attorneys for Plaintiffs

LEANDRO VICUÑA and PERE KYLE, individually, and on behalf of other members of the public similarly situated

FIRST AMENDED CLASS ACTION COMPLAINT