Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Natasha Mehta (SBN 272241)
nmehta@baronbudd.com
BARON & BUDD, P.C.
1999 Avenue of the Stars, Suite 3450
Los Angeles, California  90067

Nadeem Faruqi
nfaruqi@faruqilaw.com
Juan E. Monteverde
jmonteverde@faruqilaw.com
David E. Bower (SBN 119546)
dbower@faruqilaw.com
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone:   (424) 256-2884
Facsimile:    (424) 256-2885

*Co-Lead Counsel for the Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: ALEXIA FOODS, INC. LITIGATION | Case Number: 4:11-cv-06119-PJH **CONSOLIDATED CLASS ACTION COMPLAINT FOR:** |

   (1)   Violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*);

   (2)   Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*);

   (3)   Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*);

   (4)   Breach of Express Warranty;

   (5)   Negligent Misrepresentation;

   (6)   Unjust Enrichment; and

   (7)   Violation of New York Deceptive Trade Practice Act (N.Y.G.B.L. § 349)

**Jury Trial Demanded**

1   Plaintiffs LEANDRO VICUÑA, PERE KYLE, and DAVID ECKSTEIN

2   ("Plaintiffs"), individually and on behalf of all other members of the public similarly

3   situated, allege as follows:

### NATURE OF THE ACTION

5   1.   This is a consumer class action regarding Defendant Alexia Foods, Inc.'s

6   unfair, unlawful, deceptive, and misleading practices conducted in violation of California

7   state law, and common law.  This action involves certain frozen potato products, as

8   discussed herein, including "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea

9   Salt," "Mashed Potatoes Red Potatoes with Garlic & Parmesan" "Waffle Fries," "Harvest

10  Sauté," "Italian Sauté," "Sauté Sweets," and "Potato Bites" (the "Products") that are

11  manufactured and marketed by Defendant Alexia Foods, Inc. ("Defendant" or "Alexia").

12  2.   In connection with its marketing of the Products and its brand generally,

13  including communications made through product packaging, in print, on television, at

14  public events, promotions, on the company's website, and other media, Alexia makes

15  representations that are intended to mislead consumers to believe that the Products are

16  "All Natural" or "Natural," when in fact, they contain the synthetic chemical preservative

17  disodium dihydrogen pyrophosphate.

18  3.   Alexia's "All Natural" labeling is central to the company's marketing of the

19  Products, and as a result, Alexia commands a premium price for the Products, using "All

20  Natural" claims to distinguish the Products from its competitors' products.

21  4.   Alexia's misrepresentations about the Products bombard consumers with a

22  message of being all-natural to draw consumer attention away from the fact that the

23  Products contain synthetic chemicals.  Indeed, reasonable consumers like Plaintiffs do not

24  believe synthetic chemical ingredients like disodium dihydrogen pyrophosphate are in the

25  Products, which are prominently represented to be "All Natural."  Accordingly, Alexia's

26  marketing and representations are likely to deceive reasonable consumers, and did in fact,

27  deceive Plaintiffs.

28  5.   Plaintiffs and members of the Class, as defined below, relied on Alexia's

"All Natural" representations, and they were material to Plaintiffs and members of the Class, when they purchased the Products.  Therefore, Plaintiffs and members of the Class were damaged because they paid for products that were expressly represented to be "All-Natural," but when they purchased the Products, they received products with synthetic chemicals that were not all-natural.

6.     Alexia's consumer deception is both knowing and willful.  Alexia knows what representations it made on the Products – indeed, "All Natural" is prominently featured on practically all of the company's products.  As the manufacturer of the Products, Alexia also knew what ingredients were added to the Products.  Alexia knew, or should have known, that federal laws and regulations define "natural" as excluding synthetic chemicals, and that reasonable consumers understand the word "natural" to exclude synthetic substances like disodium dihydrogen pyrophosphate.

7.     Reasonable consumers like Plaintiffs should not be forced to look beyond the misleading representations, which are prominently featured on the Products' packaging, marketing, advertising, and promotional materials, to try and discover the truth from a list of confusing and scientifically complex ingredients identified in small print on the back of the label.  Instead, reasonable consumers should be able to trust that Alexia's representations are consistent with the ingredient list, and not the opposite, as is the case with the Products.

8.     Alexia's false and misleading representations violate state law, as detailed below, including California's Unfair Competition Law, False Advertising Law, Consumers Legal Remedies Act, the New York Deceptive Trade Practice Act, and the common law.

**JURISDICTION AND VENUE**

9.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendant.  Further, greater than two-thirds of the Class Members reside in states other than the states in which Defendant is a citizen.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiffs ordinarily would expect to try them in one judicial proceeding.

10.     Venue lies within this judicial district under 28 U.S.C. § 1391(a) and (c) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue.

**Intradistrict Assignment**

11.     Consistent with Northern District of California Civil Local Rule 3-5(b), assignment to the San Francisco or Oakland Division is appropriate under Civil Local Rules 3-2(c) and 3-2(d), because acts giving rise to the claims at issue in this Complaint occurred, among other places in this district, in Alameda County.

**PARTIES**

12.     Plaintiff Pere Kyle, an individual, is a citizen of California.

13.     Plaintiff Leandro Vicuña, an individual, is a citizen of California.

14.     Plaintiff David Eckstein, an individual, is a citizen of New York.

15.     Defendant Alexia Foods, Inc. is a Delaware corporation, with its principal place of business located at 51-02 21st Street, #3B, Long Island City, New York  11101, and therefore, Alexia is a citizen of Delaware and New York.

16.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary

business and affairs of Defendant.

## FACTUAL BACKGROUND

17.    Alexia claims, "Alexia Foods produces an all-natural, trans-fat free line of frozen products for the natural and specialty food consumer . . ."[1]  It further claims, "The Alexia Foods portfolio currently includes the No. 1 selling line of *natural* frozen potatoes . . ." (emphasis added).[2]

18.    Alexia's "All Natural" claim is incorporated into the company's primary branding, which appears as follows:



---

[1] *See* News Release, November 6, 2007, "Alexia Foods Serves Up All Natural, Stress-Free Alternatives to Traditional Holiday Fare" available at:
http://investor.conagrafoods.com/phoenix.zhtml?c=202310&p=irol-newsArticle_pf&ID=1073405&highlight= (last visited November 30, 2011).

[2] *See* Press Release, November 2009, "Alexia Foods Makes Simple Foods Extraordinary" available at: http://www.alexiafoods.com/downloads/Alexia_Press_Release.pdf (last visited, November 30, 2011).

19.    Alexia's branding also includes the following "All Natural" claims:



**ALEXIA All Natural
Potatoes, Breads & Appetizers**

**In Your Grocer's Freezer**



**TRY OUR OTHER
ALEXIA ALL NATURAL
SELECT SIDES**

  

Italian Sauté        Sauté Sweets        Harvest Sauté

20.    Alexia's "All Natural" claim is featured in the company's coupons:



21.    Alexia also prominently features its "All Natural" branding at events and promotions, including as follows:

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1

### Alexia's "All Natural" Sauté Reds

2      22.    Alexia sells "Sauté Reds." Alexia claims that its "Sauté Reds" product is

3  "All Natural."

4      23.    The packaging of Alexia's "Sauté Reds" product appears as follows:

5                    Front Panel:                                    Rear Panel:





The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, all natural ingredients and herb-infused 100% olive oil.

Our Sauté Reds are a delicious blend of roasted red potatoes, baby portabella mushrooms, whole green beans and sweet Spanish onions, with a thyme-infused 100% olive oil seasoning packet.

As an accompaniment to your favorite entrée, quick and easy to prepare Alexia Select Sides complement any dining occasion.

20      24.    The back of the packaging for Alexia's "Sauté Reds" further misrepresents

21  the product's "all natural" status, stating, "The Alexia chefs help you add a little culinary

22  adventure to your meal with creative combinations of premium, *all natural*

23  ingredients . . ." (emphasis added).

24

25

26

27

28

7

**Alexia's "All Natural" Mashed Potatoes Yukon Gold Potatoes & Sea Salt**

25.    Alexia also sells "Mashed Potatoes Yukon Gold Potatoes & Sea Salt." Alexia claims that its "Mashed Potatoes Yukon Gold Potatoes & Sea Salt" product is "All Natural."

26.    The packaging of Alexia's "Mashed Potatoes Yukon Gold Potatoes & Sea Salt" product appears as follows:

Front Panel:                                               Rear Panel:





Yukon Gold potatoes are lightly seasoned with Sea Salt to create this creamy and delicious mashed potato recipe that is simple yet sublime. This perfect blend completes any dining occasion.

Quick and easy to prepare Alexia Mashed Potatoes are also available in another fantastic flavor, Red Potatoes with Garlic & Parmesan.

8

1    **Alexia's "All Natural" Mashed Potatoes Red Potatoes with Garlic & Parmesan**

2        27.    Alexia also sells "Mashed Potatoes Red Potatoes with Garlic & Parmesan."

3    Alexia claims that its "Mashed Potatoes Red Potatoes with Garlic & Parmesan" product is

4    "All Natural."

5        28.    The packaging of Alexia's "Mashed Potatoes Red Potatoes with Garlic &

6    Parmesan" product appears as follows:

7                    Front Panel:                                    Back Panel:





Northwest Grown Red Potatoes,
Roasted Garlic, Parmesan Cheese and
Extra Virgin Olive Oil combine
beautifully to create this delicious
all-natural Mashed Potato recipe – the
perfect side dish and complement to any
entrée.

Quick and easy to prepare Alexia
Mashed Potatoes are also available in
another fantastic flavor, Yukon Gold
Potatoes & Sea Salt.

23        29.    The back of the packaging for Alexia's "Mashed Potatoes Red Potatoes with

24    Garlic & Parmesan" further misrepresents the product's "all natural" status, stating,

25    "Northwest Grown Red Potatoes, Roasted Garlic, Parmesan Cheese and Extra Virgin

26    Olive Oil combine beautifully to create this delicious *all-natural* Mashed Potato

27    recipe . . ." (emphasis added).

**Alexia's "All Natural" Waffle Fries**

30.    Alexia also sells "Waffle Fries."  Alexia claims that its "Waffle Fries" product is "All Natural."

31.    The packaging of Alexia's "Waffle Fries" product appears as follows:

Front Panel:                                        Back Panel:





Fun and flavorful, Alexia's Waffle Fries are a delicious interpretation of the European Classic, Pommes Gaufrettes. Lightly seasoned with Sea Salt, Pepper, and just the right amount of Onion and Garlic, Alexia Waffle Fries make a fantastic snack or a great accompaniment to your favorite entrée.

32.    The back of the packaging for Alexia's "Waffle Fries" further misrepresents the product's "all natural" status, stating, "These crispy potatoes are lightly seasoned with a flawless blend of sea salt, pepper onion and garlic to create an *all-natural* distinctive taste . . ." (emphasis added).

**Alexia's "All Natural" Harvest Sauté**

33.    Alexia also sells "Harvest Sauté."  Alexia claims that its "Harvest Sauté" product is "All Natural."

10

1

34.    The packaging of Alexia's "Harvest Sauté" product appears as follows:

2

Front Panel:                                    Back Panel:

3



The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, all natural ingredients and herb-infused 100% olive oil.

Our Harvest Sauté is a delicious blend of roasted red potatoes, batonnet-cut carrots, whole green beans and sweet Spanish onions, with a sage-infused 100% olive oil seasoning packet.

As an accompaniment to your favorite entrée, quick and easy to prepare Alexia Select Sides complement any dining occasion.

35.    The back of the packaging for Alexia's "Harvest Sauté" further misrepresents the product's "all natural" status, stating, "The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, *all natural* ingredients . . ." (emphasis added).

### Alexia's "All Natural" Italian Sauté

36.    Alexia also sells "Italian Sauté."  Alexia claims that its "Italian Sauté" product is "All Natural."

37.   The packaging of Alexia's "Italian Sauté" product appears as follows:

Front Panel:                                           Back Panel:





The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, all natural ingredients and herb-infused 100% olive oil.

Our Italian Sauté is a delicious blend of roasted red potatoes with great northern beans, juicy red tomatoes, sweet Spanish onions and spinach, with a basil-infused 100% olive oil seasoning packet.

As an accompaniment to your favorite entrée, quick and easy to prepare Alexia Select Sides complement any dining occasion.

38.   The back of the packaging for Alexia's "Italian Sauté" further misrepresents the product's "all natural" status, stating, "The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, *all natural* ingredients . . ." (emphasis added).

### Alexia's "All Natural" Sauté Sweets

39.   Alexia also sells "Sauté Sweets."  Alexia claims that its "Sauté Sweets" product is "All Natural."

40.     The packaging of Alexia's "Sauté Sweets" product appears as follows:

Front Panel:                                              Back Panel:





The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, all natural ingredients and herb-infused 100% olive oil.

Our Sauté Sweets are a delicious blend of roasted sweet potatoes with black beans, sweet corn, red bell peppers and sweet Spanish onions, with a chipotle-infused 100% olive oil seasoning packet.

As an accompaniment to your favorite entrée, quick and easy to prepare Alexia Select Sides complement any dining occasion.

41.     The back of the packaging for Alexia's "Sauté Sweets" further misrepresents the product's "all natural" status, stating, "The Alexia chefs help you add a little culinary adventure to your meal with creative combinations of premium, *all natural* ingredients . . ." (emphasis added).

**Alexia's "All Natural" Potato Bites**

42.     Alexia also sells "Potato Bites."  Alexia claims that its "Potato Bites" product is "All Natural."

13

43.    The packaging of Alexia's "Potato Bites" product appears as follows:

Front Panel:



44.    The back of the packaging for Alexia's "Potato Bites" further misrepresents the product's "all natural" status, stating, "At acclaimed international restaurants, Chef Alex discovered that simple, *all natural* ingredients, combined with extraordinary craft could create distinctive side dishes that enhanced his unique entrees. . . .Our *All Natural* Potato Bites are our own farm-grown Russets . . ." (emphasis added).

45.    Alexia's misrepresentations concerning the Products are compounded by the representations it makes on its website.  The header of Alexia's website prominently features its "All Natural" claim, as follows:



46.     Additionally, on the website, Alexia makes such misleading statements as "We love food as much as you.  That's why we make it exactly how you would:  *all-natural*, gourmet-inspired, and absolutely delicious" (emphasis added).  See as follows:

47.    Other relevant portions of Alexia's website repeat the above misrepresentations, and state, among other things, "Alex started by hand selecting the finest *all-natural* ingredients and producing only small batches making Alexia a hard to find favorite. . . . Alex always used *real ingredients* . . ." (emphasis added).  This portion of the website appears as follows:



48.    To increase profits from its misrepresentations and encourage consumers like Plaintiff to regularly purchase and consume the Products, as discussed in Paragraph 18 above, Alexia tells consumers to "Try [their] other Alexia *all natural*" products (emphasis added).

### Alexia's Synthetic Chemical Ingredients

49.    Contrary to Alexia's exhaustive and repeated "All Natural" claims about its

1  products, the Products contain the synthetic chemical preservative, disodium dihydrogen

2  pyrophosphate.

3     50.    Plaintiffs are informed and believe, and on that basis, allege that disodium

4  dihydrogen pyrophosphate, an odorless white crystalline powder, which is also known as

5  disodium diphosphate, disodium dihydrogen pyrophosphate, disodium pyrophosphate,

6  and sodium acid pyrophosphate (collectively referred to herein as "disodium dihydrogen

7  pyrophosphate"), is an industrial chemical additive and food preservative.  The chemical

8  formula for disodium dihydrogen pyrophosphate is $H_2Na_2O_7P_2$, and the CAS number for

9  this chemical is 7758-16-9.  Disodium dihydrogen pyrophosphate is not a natural

10  substance but is manufactured by the reaction of sodium carbonate with phosphoric acid.

11  followed by heating of the resulting disodium dihydrogen pyrophosphate to 220 degrees

12  Celsius.

13     51.    Plaintiffs are informed and believe, and on that basis, allege that disodium

14  dihydrogen pyrophosphate is used in the leather industry to remove iron stains on hides

15  during processing, and that when added to the scalding water, disodium dihydrogen

16  pyrophosphate is used to remove hair in hog slaughter and feathers in poultry slaughter.

17  Additionally, Plaintiffs are informed and believe, and on that basis, allege that in

18  petroleum industry, disodium dihydrogen pyrophosphate can be used as a dispersant for

19  oil production.

20     52.    Plaintiffs are informed and believe, and on that basis, allege that in the food

21  industry, disodium dihydrogen pyrophosphate is used to color foods and to prevent

22  discoloration in foods.  For example, disodium dihydrogen pyrophosphate is used to color

23  hot dogs in their packaging, and similar to the way Alexia uses it, it is used in

24  commercially packaged hash browns to prevent potatoes from oxidizing and browning.

25     53.    Plaintiffs and other similarly situated reasonable consumers do not expect

26  synthetic chemicals like disodium dihydrogen pyrophosphate to be in a food product that

27  is labeled "All Natural."

28     54.    Alexia is well aware that foods containing synthetic chemicals are not "All

Natural."  Indeed, the term "natural" is defined by federal government agencies who regulate companies like Alexia, who manufacture, market, and distribute food products.

55.     For example, the United States Food and Drug Administration ("FDA") has stated "its policy regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  58 F.R. 2302 at 2407 (January 6, 1993).

56.     Federal regulations define "synthetic" as follows:

> Synthetic.  A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

7 C.F.R. § 205.2.

57.     Additionally, the United States Department of Agriculture's Food Safety and Inspection Service ("FSIS") also defines a "natural" product as a product that does not contain any artificial or synthetic ingredient and does not contain any ingredient that is more than "minimally processed," stating that a product may be labeled as "natural" if:

> (1) the product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than minimally processed. Minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g.,

grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.[3]

58.     Regardless of these federal laws and regulations, based on Alexia's extensive "All Natural" representations about the Products, reasonable consumers do not expect the Products to contain synthetic preservatives and white crystalline chemical powders like disodium dihydrogen pyrophosphate.

## PLAINTIFFS' CLAIMS AGAINST ALEXIA

59.     Plaintiff Vicuña is a resident of Livermore, which is in Alameda County, California, Plaintiff Kyle is a resident of Los Angeles, which is in Los Angeles County, California, and Plaintiff Eckstein is a resident of New York.

60.     Plaintiff Kyle purchased and consumed Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products, believing them to be all-natural.

61.     As discussed in detail in the preceding paragraphs, in connection with Alexia's advertising campaign concerning the Alexia's brand generally and the Products themselves, Plaintiff Kyle saw and relied on Alexia's "All Natural" representations, which were intended to mislead consumers like him to believe that the Products are all-natural, when in fact, they are not.  Plaintiff Kyle relied on Alexia's "All Natural" representations and believed the Products were all-natural.

62.     Plaintiff Vicuña purchased Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," "Mashed Potatoes Red Potatoes with Garlic & Parmesan" "Waffle Fries," "Harvest Sauté," "Italian Sauté," "Sauté Sweets," and "Potato Bites" products for his own and his family's consumption.  Plaintiff Vicuña believed the Products were all-natural.

63.     As discussed above, in connection with Alexia's advertising campaign concerning the Alexia's brand generally and the Products themselves, Plaintiff Vicuña

---

[3] *See* http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited December 1, 2011).

saw and relied on Alexia's "All Natural" representations, which were intended to mislead consumers like him to believe that the Products are all-natural, when in fact, they are not. Plaintiff Vicuña relied on Alexia's "All Natural" representations and believed the Products were all-natural.

64.   Plaintiff Eckstein purchased Alexia's "Mashed Potatoes Yukon Gold Potatoes & Sea Salt." Plaintiff Eckstein believed the products were all-natural.

65.   Alexia's "All Natural" representations were material to Plaintiffs and members of the Class (as defined below) when they purchased the Products. Plaintiffs and members of the Class did not receive the benefit of the bargain from their purchases, however, because they paid for "All Natural" products, but the products they actually received from Alexia contained synthetic chemical preservatives, and were not all-natural. Accordingly, Plaintiffs and members of the Class suffered injury in fact and lost money as a result of Alexia's having misrepresented the Products as being "All Natural." But for Alexia's misrepresentations, Plaintiffs and members of the Class would not have purchased and consumed the Products, rather they would have purchased similar products from one of Alexia's competitors, or they would have paid less for the Products.

## CLASS ACTION ALLEGATIONS

66.   Plaintiff brings this action, on behalf of himself and all others similarly situated, as a class action under Rule 23 of the Federal Rules of Civil Procedure.

67.     The classes Plaintiffs seek to represent (the collectively the "Class") are defined as follows:

> All residents of California who purchased Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," "Mashed Potatoes Red Potatoes with Garlic & Parmesan" "Waffle Fries," "Harvest Sauté," "Italian Sauté," "Sauté Sweets," and "Potato Bites" products containing disodium dihydrogen pyrophosphate during the period of December 6, 2007 continuing through the date of final disposition of this action (the "California Statutory Class").

> All residents of the United States of America who purchased Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," "Mashed Potatoes Red Potatoes with Garlic & Parmesan" "Waffle Fries," "Harvest Sauté," "Italian Sauté," "Sauté Sweets," and "Potato Bites" products containing disodium dihydrogen pyrophosphate during the period of December 6, 2007 continuing through the date of final disposition of this action (the "Common Law Class").

> All persons who, within the State of New York, purchasedAlexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," "Mashed Potatoes Red Potatoes with Garlic & Parmesan" "Waffle Fries," "Harvest Sauté," "Italian Sauté," "Sauté Sweets," and "Potato Bites" products containing disodium dihydrogen pyrophosphate during the period of March 1, 2008 continuing through the date of final disposition of this action (the "New York Class").

68.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

69.     Plaintiff reserves the right to establish sub-classes as appropriate.

70.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class

1   Members" shall mean and refer to the members of the Class.

2        71.   Community of Interest:  There is a well-defined community of interest

3   among members of the Class, and the disposition of the claims of these members of the

4   Class in a single action will provide substantial benefits to all parties and to the Court.

5        72.   Numerosity:  While the exact number of members of the Class is unknown to

6   Plaintiff at this time and can only be determined by appropriate discovery, membership in

7   the Class is ascertainable based upon the records maintained by Defendant.  At this time,

8   Plaintiff is informed and believes that the Class includes thousands of members.

9   Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a

10  single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and

11  the resolution of their claims through the procedure of a class action will be of benefit to

12  the parties and the Court.

13       73.   Ascertainablity:  Names and addresses of members of the Class are available

14  from Defendant's records.  Notice can be provided to the members of the Class through

15  direct mailing, publication, or otherwise using techniques and a form of notice similar to

16  those customarily used in consumer class actions arising under California state law and

17  federal law.

18       74.   Typicality:  Plaintiff's claims are typical of the claims of the other members

19  of the Class which she seeks to represent under Federal Rule of Civil Procedure 23(a)(3)

20  because Plaintiff and each member of the Class has been subjected to the same deceptive

21  and improper practices and has been damaged in the same manner thereby.

22       75.   Adequacy:  Plaintiff will fairly and adequately represent and protect the

23  interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4).

24  Plaintiff is an adequate representative of the Class, because he has no interests which are

25  adverse to the interests of the members of the Class.  Plaintiff is committed to the

26  vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are

27  competent and experienced in handling class action litigation on behalf of consumers.

28       76.   Superiority:  A class action is superior to all other available methods of the

fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

    (a)    The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their "negative value" claims other than through the procedure of a class action.

    (b)    If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

    (c)    Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

77.    Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

78.    The common questions of fact include, but are not limited to, the following:

    (a)    Whether Defendant's practice of misleading consumers who purchase Alexia's "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," and "Mashed Potatoes Red Potatoes with Garlic & Parmesan" products violates one or more provisions of the CLRA;

    (b)    Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

    (c)    Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

    (d)    Whether Defendant's conduct was willful or reckless;

    (e)    Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit; and

(f)     Whether Defendant engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200 *et seq.* and 17500 *et seq.*

79.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant.

(b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

80.     Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

# FIRST CAUSE OF ACTION

## Brought on Behalf of the California Statutory Class

## Violation of the Consumers Legal Remedies Act

### (Cal. Civil Code §§ 1750 *et seq.*)

81. Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

82. Plaintiffs bring this cause of action on behalf of themselves and the other members of the California Statutory Class.

83. This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA"). Plaintiffs and members of the Class are consumers as defined by California Civil Code section 1761(d). The Products are goods within the meaning of California Civil Code section 1761(a).

84. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the California Statutory Class, which were intended to result in, and did result in, the sale of the Products:

> (5) Representing that [the Product have]… characteristics…[and] uses…which they do not have….
>
> (7) Representing that [the Product] are of a particular standard…if they are of another.
>
> (9) Advertising goods…with intent not to sell them as advertised.

85. Defendant violated the CRLA by representing and advertising that the Products, as discussed above, were "All Natural." Defendant knew, however, that this was not the case and that in reality, the Products contain synthetic chemical preservatives.

86. On December 5, 2011, and January 25, 2012, via certified mail, return receipt requested, under Section 1782 of the CLRA Plaintiff Vicuña notified Defendant in writing of the particular violations of Section 1770, and demanded that Defendant rectify the

25

problems associated with the behavior detailed above, which acts and practices are in violation of Section 1770.

87.     Defendant failed to rectify the violations identified by Plaintiff Vicuña. Therefore, under Section 1780(a) of the CLRA, Plaintiff Vicuña and members of the Class seek actual and punitive damages.

88.     Concurrent with the filing of the initial Class Action Complaint in this action, Plaintiff filed a Declaration of Venue in accordance with Civil Code section 1780(d).

89.     Under Section 1782(d) of the CLRA, Plaintiffs also seek an order enjoining the act and practices described above, restitution of property, and any other relief that the court deems proper.

90.     Defendant's conduct is malicious, fraudulent, and wanton, and Defendant intentionally misleads and withholds material information from consumers in order to increase the sale of the Products.

91.     Defendant's misrepresentations were material Plaintiffs and members of the Class.  Plaintiffs and members of the California Statutory Class would not have purchased and consumed the Products had it not been for Defendant's misrepresentations of material facts, rather they would have purchased other products from Defendant's competitors, or they would have paid less for the Products if they were not represented to be "All Natural."  Plaintiffs and members of the California Statutory Class were damaged as a result of Defendant's material misrepresentations.

## SECOND CAUSE OF ACTION

### Brought on Behalf of the California Statutory Class

### Violation of Unfair Business Practices Act

### (California Business & Professions Code §§ 17200 *et seq.*)

92.     Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

93.     Plaintiffs bring this cause of action on behalf of themselves and the other

26

1   members of the California Statutory Class.

2       94.    California Business and Professions Code section 17200 prohibits "any

3   unlawful, unfair or fraudulent business act or practice." For the reasons described above,

4   Defendant has engaged in unlawful, unfair, and/or fraudulent business acts or practices in

5   violation of California Business and Professions Code section 17200.

6       95.    Defendant's misrepresentations of material facts, as set forth herein,

7   constitute an unlawful practice because they violate California Civil Code sections 1572,

8   1573, 1709, 1710, 1711, and 1770, among others, as well as the common law.

9       96.    Defendant's misrepresentations of material facts, as set forth herein, also

10  constitute "unfair" business acts and practices within the meaning of California Business

11  and Professions Code sections 17200 *et seq.*, in that Defendant's conduct was injurious to

12  consumers, offended public policy, and was unethical and unscrupulous. Plaintiff also

13  asserts a violation of public policy by withholding material facts from consumers.

14  Defendant's violation of California's consumer protection and unfair competition laws in

15  California resulted in harm to consumers.

16      97.    There were reasonable alternatives available to Defendant to further

17  Defendant's legitimate business interests, other than the conduct described herein.

18      98.    California Business and Professions Code section 17200 also prohibits any

19  "fraudulent business act or practice."

20      99.    Defendant's misrepresentations of material facts, as set forth above, were

21  false, misleading, and/or likely to deceive the public within the meaning of California

22  Business and Professions Code section 17200.

23      100.   Defendant's misrepresentations were made with knowledge of their effect,

24  and were done to induce Plaintiffs and members of the California Statutory Class to

25  purchase the Products. Plaintiffs and members of the California Statutory Class saw and

26  justifiably relied on Defendant's misrepresentations when purchasing the Products.

27      101.   Defendant's conduct caused and continues to cause injury to Plaintiffs and

28  members of the California Statutory Class. Defendant's misrepresentations were material

1  Plaintiffs and members of the Class.  Plaintiffs and members of the California Statutory

2  Class would not have purchased and consumed the Products had it not been for

3  Defendant's misrepresentations of material facts.  Plaintiffs and members of the

4  California Statutory Class have suffered injury in fact and have lost money as a result of

5  Defendant's fraudulent conduct.

6      102.   Plaintiffs and members of the California Statutory Class would not have

7  purchased and consumed the Products had it not been for Defendant's misrepresentations

8  of material facts.  Defendant's misrepresentations alleged herein are objectively material

9  to the reasonable consumer.  Reliance upon the misrepresentations discussed herein may

10  therefore be presumed as a matter of law.  The materiality of such representations also

11  establishes causation between Defendant's conduct and Plaintiffs' and the members of the

12  California Statutory Class' injuries

13      103.   Defendant has thus engaged in unlawful, unfair, and fraudulent business acts

14  entitling Plaintiffs and members of the California Statutory Class to judgment and

15  equitable relief against Defendants, as set forth in the Prayer for Relief.

16      104.   Additionally, under Business and Professions Code section 17203, Plaintiffs

17  and members of the California Statutory Class seek an order requiring Defendant to

18  immediately cease such acts of unlawful, unfair, and fraudulent business practices, and

19  requiring Defendant to correct its actions.

20                              **THIRD CAUSE OF ACTION**

21            **Brought on Behalf of the California Statutory Class**

22                   **Violation of False Advertising Law**

23        **(California Business & Professions Code §§ 17500 *et seq.*)**

24      105.   Plaintiffs incorporate by reference in this cause of action each and every

25  allegation of the preceding paragraphs, with the same force and effect as though fully set

26  forth herein.

27      106.   Plaintiffs bring this cause of action on behalf of themselves and the other

28  members of the California Statutory Class.

107.   California Business and Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

108.   Defendant violated California Business and Professions Code section 17500 by, *inter alia*, misleadingly advertising that the Products are "All Natural," when in fact, they are not.

109.   Defendant's deceptive practices were specifically designed allow Defendant to command a premium price for the Products, and to induce Plaintiffs and members of the California Statutory Class to purchase the Products over those of Defendant's competitors.  Defendant's deceptive practices were carried out on the packaging for the Products, in print, on-line, on Defendant's website, and other broad-based media, in order to induce Plaintiffs and members of the California Statutory Class to purchase the Products.

110.   Plaintiffs and members of the California Statutory Class would not have purchased and consumed the Products had it not been for Defendant's misrepresentations of material facts.  Plaintiffs and members of the California Statutory Class were denied the benefit of the bargain when they decided to purchase the Products over competitor products, which are less expensive or actually contain all-natural ingredients, or they do not unlawfully claim to be all natural.  Had Plaintiffs and members of the California Statutory Class been aware of Alexia's false and misleading advertising tactics, they would have paid less than what they paid for the Products, or they would not have purchased the Products at all

111.   The content of the advertisements, as alleged herein, were of a nature likely to deceive a reasonable consumer.

112.   Defendant knew, or in the exercise of reasonable care, should have known, that the representations were untrue or misleading and likely to deceive reasonable consumers.

113.   Defendant's misrepresentations alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations may therefore be

CONSOLIDATED CLASS ACTION COMPLAINT

1  presumed as a matter of law.  The materiality of such representations also establishes

2  causation between Defendant's conduct and Plaintiffs' and the members of the California

3  Statutory Class' injuries.

4      114.   Unless restrained by this Court, Defendant will continue to engage in

5  misleading advertising, as alleged above, in violation of California Business and

6  Professions Code section 17500.

7      115.   As a result of the foregoing, Plaintiffs and members of the California

8  Statutory Class have been injured in fact and lost money or property, and they are entitled

9  to restitution and injunctive relief.

## FOURTH CAUSE OF ACTION

### Brought on Behalf of the Common Law Class

### Breach of Express Warranty

13     116.   Plaintiffs incorporate by reference in this cause of action each and every

14  allegation of the preceding paragraphs, with the same force and effect as though fully set

15  forth herein.

16     117.   Plaintiffs bring this cause of action on behalf of themselves and the members

17  of the Common Law Class.

18     118.   In selling the Products as "All Natural," Defendant made promises and

19  affirmations of fact on the Products' packaging and through the marketing and

20  advertising, as described above.  This marketing and advertising constitutes express

21  warranties and became part of the basis of the bargain between Plaintiffs and members of

22  the Common Law Class and Defendant.

23     119.   Defendant purports through its advertising to create express warranties of the

24  Products as all-natural by making the affirmation of fact, and promising that the Products

25  are "All Natural."

26     120.   Despite express warranties about the "All Natural" nature of the Products, the

27  Products contain the synthetic chemical preservative disodium dihydrogen pyrophosphate.

28     121.   Defendant breached express warranties about the Products and their qualities

30

1  because the Products do not conform to Defendant's affirmations and promises to be "All

2  Natural."

3       122.   As a result of Defendant's breach of express warranty, Plaintiff and members

4  of the Common Law Class were harmed in the amount of the purchase price they paid for

5  the Products.

## FIFTH CAUSE OF ACTION

### Brought on Behalf of the Common Law Class

### Negligent Misrepresentation

9       123.   Plaintiffs incorporate by reference in this cause of action each and every

10  allegation of the preceding paragraphs, with the same force and effect as though fully set

11  forth herein.

12      124.   Plaintiffs bring this cause of action on behalf of themselves and the members

13  of the Common Law Class.

14      125.   Defendant, directly or through its agents and employees, made false

15  representations to Plaintiffs and members of the Common Law Class.

16      126.   In making the representations of fact to Plaintiffs and members of the

17  Common Law Class described herein, Defendant has failed to fulfill its duties to disclose

18  the material facts set forth above.  The direct and proximate cause of said failure to

19  disclose was the negligence and carelessness of Defendant.

20      127.   In making the representations, and in doing the acts alleged above, Defendant

21  acted without any reasonable grounds for believing the representations were true, and

22  intended by said representations to induce the reliance of Plaintiffs and members of the

23  Common Law Class.

24      128.   Plaintiffs and members of the Common Law Class relied upon these false

25  representations by Defendant when purchasing the products at issue herein, which

26  reliance was justified.

27      129.   As a result of Defendant's wrongful conduct, Plaintiffs and members of the

28  Common Law Class have suffered and continue to suffer economic losses and other

1   general and specific damages, including but not limited to the amounts paid for the

2   Products, and any interest that would have been accrued on those monies, all in an amount

3   to be determined according to proof at time of trial.

### SIXTH CAUSE OF ACTION

### Brought on Behalf of the Common Law Class

### Unjust Enrichment

7   130.   Plaintiffs incorporate by reference in this cause of action each and every

8   allegation of the preceding paragraphs, with the same force and effect as though fully set

9   forth herein.

10   131.   Plaintiffs bring this cause of action on behalf of themselves and the members

11   of the Common Law Class.

12   132.   By its wrongful acts and misrepresentations, Defendant was unjustly

13   enriched at the expense of Plaintiffs and members of the Common Law Class, who did not

14   receive the goods to which they were entitled—namely products that did not contain

15   synthetic chemical preservatives—for the payments made to Defendant, and thus,

16   Plaintiffs and members of the Common Law Class were unjustly deprived.

17   133.   It would be inequitable and unconscionable for Defendant to retain the profit,

18   benefit and other compensation it obtained from its deceptive, misleading, and unlawful

19   conduct alleged herein.

20   134.   Plaintiffs and members of the Common Law Class seek restitution from

21   Defendant, and seek an order of this Court disgorging all profits, benefits, and other

22   compensation obtained by Defendant from its wrongful conduct.

## SEVENTH CAUSE OF ACTION

### Brought on Behalf of the New York Class

### New York Deceptive Trade Practice Act

### (N.Y.G.B.L. § 349)

135.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

136.   Plaintiff Eckstein bring this cause of action on behalf of himself and the members of the New York Class.

137.   Defendant committed deceptive trade practices in connection with the misconduct herein alleged, including through its acts of fraudulent concealment.  Such acts include Defendant's intentional concealment from Plaintiff Eckstein and other consumers among the general public that the Products are not "All Natural" and contain synthetic chemical preservative, disodium dihydrogen pyrophosphate.

138.   Defendant's conduct herein described, including its violation of its duty to disclose and fraudulent concealment of defects in the Products, constitutes a deceptive trade practice in violation of N.Y.G.B.L. § 349.

139.   Defendant's deceptive acts described herein were directed at consumers such as Plaintiffs.

140.   Defendant's deceptive acts described herein were misleading in a material way.

141.   As a proximate result of Defendant's deceptive acts, Plaintiff and the public, including the Class, have been damaged.

## PRAYER FOR RELIEF

Plaintiffs, and on behalf of themselves and all others similarly situated, requests the Court to enter judgment against Defendant, as follows:

1.   Certifying the Class, including the California Statutory Class, the New York

Class, and the Common Law Class, as requested herein, certifying Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class;

2.      Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations discussed herein;

3.  Awarding Plaintiffs and the members of the Class compensatory damages in an amount according to proof at trial;

4.  Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and members of the Class;

5.  Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

6.  Awarding to Plaintiff and the Class punitive damages;

7.  Ordering Defendant to engage in corrective advertising;

8.  Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9.  Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10. For such other and further relief as the Court deems just and proper.

CONSOLIDATED CLASS ACTION COMPLAINT

Dated: May 9, 2012

BARON & BUDD, P.C.
Roland Tellis
Mark Pifko
Natasha Mehta

By: _____
      Mark Pifko

David E. Bower (SBN 119546)
dbower@faruqilaw.com
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

-and-

Nadeem Faruqi
nfaruqi@faruqilaw.com
Juan E. Monteverde
jmonteverde@faruqilaw.com
FARUQI & FARUQI, LLP
369 Lexington Ave., Tenth Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Lead Counsel for the Proposed Class

CONSOLIDATED CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

Dated: May 9, 2012

BARON & BUDD, P.C.
Roland Tellis
Mark Pifko
Natasha Mehta

By: _____
     Mark Pifko

David E. Bower (SBN 119546)
dbower@faruqilaw.com
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

-and-

Nadeem Faruqi
nfaruqi@faruqilaw.com
Juan E. Monteverde
jmonteverde@faruqilaw.com
FARUQI & FARUQI, LLP
369 Lexington Ave., Tenth Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Lead Counsel for the Proposed Class

36