**BARON & BUDD, P.C.**
Roland Tellis (State Bar No. 186269)
Mark Pifko (State Bar No. 228412)
Natasha Mehta (State Bar No. 272241)
15910 Ventura Boulevard
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile:  (818) 986-9698
[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

In re: ALEXIA FOODS, INC.
LITIGATION

Case No.  11-cv-06119-PJH

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE; MEMORANDUM OF LAW IN SUPPORT; DECLARATION OF MARK PIFKO FILED HEREWITH**

**Hearing Information**
Date:  July 10, 2013
Time:  9:00 a.m.
Courtroom:  Courtroom 3, 3rd Floor
Judge: Hon. Phyllis J. Hamilton

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 11-cv-06119-PJH

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on Wednesday, July 10, 2013 at 9:00 a.m. before the Honorable Phyllis J. Hamilton, United States District Court Judge for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, plaintiffs by and through the undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(e), for entry of the [Proposed] Order Preliminarily Approving Class Action Settlement and Provisionally Certifying the Nationwide Settlement Class; and Approving Procedure For and Form of Notice ("Preliminary Approval Order").

This motion is based on: (1) this Notice of Motion, Motion and Memorandum in support thereof, (2) the Declaration of Mark Pifko in Support of Motion for Preliminary Approval of Class Action Settlement and Provisional Class Certification (the "Pifko Decl.," filed herewith), (3) the Stipulation of Settlement between Plaintiff Class and Defendant, (4) the papers and pleadings on file, and (5) the papers filed by Defendant in support of this motion, and the arguments of counsel at the hearing on the Motion.

Dated: June 4, 2013                    Respectfully submitted,

**BARON & BUDD, P.C.**

By: _____/s/ Mark Pifko_____
          Mark Pifko

Roland Tellis (State Bar No. 186269)
Mark Pifko (State Bar No. 228412)
Natasha Mehta (State Bar No. 272241)
15910 Ventura Boulevard
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

**FARUQI & FARUQI, LLP**
David E. Bower (State Bar No. 119546)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 93-9331

*Plaintiffs' Co-Lead Interim Class Counsel and Co-Counsel for Class Representatives*

# TABLE OF CONTENTS

**PAGE(S)**

MEMORANDUM OF LAW..............................................................................................1

I.      INTRODUCTION ..............................................................................................1

II.     PROCEDURAL BACKGROUND ....................................................................3

III.    THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS
        ACTION SETTLEMENTS ................................................................................5

IV.     TERMS OF THE PROPOSED SETTLEMENT................................................7

        A.      Benefit to Settlement Class Members from the Settlement Fund ...........7

        B.      Release And Discharge Of Claims .........................................................9

        C.      Payment Of Attorneys' Fees And Expenses ..........................................9

        D.      Compensation For The Class Representatives ........................................9

        E.      Payment Of Notice And Administrative Fees ......................................10

V.      THIS COURT SHOULD PRELIMINARILY APPROVE THE
        SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS AND ENTER
        THE PRELIMINARY APPROVAL ORDER ..................................................10

        A.      The Settlement Should Be Preliminarily Approved Because It
                Satisfies Accepted Criteria ..................................................................10

        B.      The Proposed Settlement Class Should Be Certified ...........................12

                1.      The Settlement Class Satisfies Rule 23(a)...............................12

                        a.      Numerosity ...................................................................12

                        b.      Commonality ................................................................13

                        c.      Typicality.....................................................................14

                        d.      Adequacy .....................................................................14

                2.      The Settlement Class Satisfies Rule 23(b)(3)..........................15

                        a.      Common Questions Of Law And Fact Predominate......15

                        b.      A Class Action Is The Superior Mechanism For
                                Adjudicating This Dispute............................................16

        C.      The Proposed Notice Program Constitutes Adequate Notice And
                Should Be Approved ............................................................................17

VI.     CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaniz v. Cal. Processors, Inc.*
    73 F.R.D. 269 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837
    (1978) ............................................................................................................. 4, 11

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................ 12, 16, 17

*Arnold v. United Artists Theatre Circuit, Inc.*
    158 F.R.D. 439 (N.D. Cal. 1994) ...................................................................... 13

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................... 6

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................ 10

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .......................................................................... 10

*Dunk v. Ford Motor Co.*,
    48 Cal. App. 4th 1794 (1996) ............................................................................. 5

*Gen. Tel. Co. of the Sw.v. Falcon*,
    457 U.S. 147 (1982) .......................................................................................... 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................. passim

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................ 5

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .................................................................... 4, 5, 6

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 4, 5

*In re Veritas Software Corp. Sec. Litig.*,
    No. 05-17393, 2007 U.S. App. LEXIS 17623 (9th Cir. July 25, 2007) ................. 10

*Livingston v. Toyota Motor Sales USA*,
    No. C-94-1377-MHP, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. June 1, 1995) ....... 10

*Morgan v. Laborers Pension Trust Fund*,
    81 F.R.D. 669 (N.D. Cal. 1979) ........................................................................ 13

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982, *cert. denied,* 459 U.S. 1217 (1983)) ...........................................6

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) ...........................................................................................................6

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000)...........................................................................................12

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................................................13

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001)..............................................................................................15

STATUTES

28 U.S.C. § 1715(b).....................................................................................................................10

Bus. & Prof. Code § 17200...........................................................................................................3

Bus. & Prof. Code § 17500...........................................................................................................3

Civil Code § 1750..........................................................................................................................3

Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*)........................................................3

OTHER AUTHORITIES

Alba Conte and Herbert Newberg,
    4 NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) .............................................10, 13, 14

*Manual for Complex Litigation,* § 21.632 (4th ed. 2004) ..........................................................11

*Manual for Complex Litigation* § 30.41 (3d ed.).....................................................................5, 17

RULES

Fed. R. Civ. P. 23(a)(1) .....................................................................................................12, 14, 15

Fed. R. Civ. P. 23(a)(2) ...............................................................................................................13

Fed. R. Civ. P. 23(a)(3) ...............................................................................................................14

Fed. R. Civ. P. 23(a)(4) ..........................................................................................................14, 15

Fed. R. Civ. P. 23 (b)(3) ..............................................................................................................16

Fed. R. Civ. P. 23 (b)(3)(D) ........................................................................................ 17

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................... 17

Fed. R. Civ. P. 23(e)(1) .............................................................................................. 17

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 10, 17

Fed. R. Civ. P. 23(g) .................................................................................................... 2

**MEMORANDUM OF LAW**

## I.     INTRODUCTION

Plaintiffs Leandro Vicuña ("Vicuña"), Pere Kyle ("Kyle"), and David Eckstein ("Eckstein," collectively, "Plaintiffs"), and Co-Lead Class Counsel for the Proposed Class, Baron & Budd, P.C. and Faruqi & Faruqi, LLP, (collectively "Class Counsel"), respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (the "Motion").

This case is a putative class action suit brought by Plaintiffs on behalf of themselves and all others similarly situated against Defendant ConAgra Foods, Inc. ("ConAgra" or "Defendant") for allegedly misleading consumers by labeling certain frozen potato products (the "Alexia Products") "natural" or "all natural," when in fact, those products contained disodium dihydrogen pyrophosphate ("DDP"). Specifically, Plaintiffs allege that the DDP in the Alexia Products is neither present in potatoes in nature, nor is it a natural. Plaintiffs allege that DDP is a synthetic chemical compound used to prevent discoloration in potatoes. DDP is registered with the Chemical Abstracts Service, under CAS Registry Number 7758-16-9. Plaintiffs allege that Alexia's "All Natural" claim is central to the company's marketing.

The Stipulation of Settlement ("Settlement" or "Settlement Agreement") and its exhibits are attached to the Declaration of Mark Pifko ("Pifko Decl."), filed herewith. As more specifically set forth in the parties' Settlement Agreement, and as described in more detail below, the parties to this Action have reached a settlement that provides a real and substantial benefit to consumers. First and foremost, under the terms of the Settlement, ConAgra has contractually agreed to cease using DDP in connection with the sale of the Alexia Products. The removal of DDP from the Alexia Products insures that the products live up to their "All Natural" claims. Additionally, without any admission of liability, ConAgra has agreed to provide meaningful monetary relief to Class Members by disbursing up to $3,200,000.00, consisting of a Cash Settlement Fund (defined in detail below) in an amount up to two million five hundred thousand dollars ($2,500,000) as well as a Voucher Settlement Fund (defined in detail below) in the amount of seven hundred thousand dollars ($700,000).

As in any class action, the Settlement is subject initially to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Accordingly, Plaintiffs now request this Court to enter an order in the form of the [Proposed] Order Granting Preliminary Approval of Class Action Settlement and Provisional Class Certification (the "Order"), which is attached to the Settlement Agreement as Exhibit E.  That Order will:

(1) grant preliminary approval of the Settlement;

(2) conditionally certify the Class on a nationwide basis, appointing Plaintiffs Vicuna, Kyle, and Eckstein as class representatives ("Class Representatives") for the Settlement Class, and appointing Roland Tellis and Mark Pifko of Baron & Budd, P.C., and Nadeem Faruqi of Faruqi & Faruqi, LLP, as counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(g);

(3) establish procedures for giving notice to members of the Settlement Class;

(4) approve forms of notice to Settlement Class Members;

(5) mandate procedures and deadlines for exclusion requests class and objections; and

(6) set a date, time and place for a final approval hearing.

Class certification for purposes of settlement is appropriate under Federal Rules of Civil Procedure 23(a) and (b)(3), as fully discussed below.

The Settlement is fair and reasonable and falls within the range of possible approval. Indeed, Class Counsel achieved a substantial benefit for the Class.  The likelihood that a greater result could be achieved at trial is remote.  To address labeling issues going forward, the Settlement achieves *complete* relief in the form of a contractual commitment by ConAgra to reformulate the ingredients in the Alexia Products.  As a result, the consumer will no longer be exposed to allegedly false messaging about the "all natural" status of the Alexia Products.  And, the Cash Settlement Fund and Voucher Settlement Fund provide a tangible and significant monetary benefit to the Class in lieu of the continued risk of litigation.

The Settlement is the product of extended arms-length negotiations commencing with a mediation at JAMS conducted by the Honorable Ronald M. Sabraw (Ret.), and followed with many months of telephonic conferences and e-mail exchanges between experienced attorneys

familiar with the legal and factual issues of this case and all Class Members are treated fairly under the terms of the Settlement.  Plaintiffs, by and through their respective counsel, have conducted an extensive investigation into the facts and law relating to this matter.  The investigation has included consulting industry personnel, extensive consultation with experts, numerous interviews of witnesses and putative members of the class, as well as legal research as to the sufficiency of the claims.  Plaintiffs and their counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement Agreement on a fully informed basis.  It is an outstanding result for parties and Settlement Class Members.  The Court should enter the proposed order granting preliminary approval.

**II.      PROCEDURAL BACKGROUND**

On December 5, 2011, Plaintiffs Vicuña and Kyle commenced an action entitled *Vicuña. v. Alexia Foods, Inc.* (United States District Court, Northern District of California, Case No. 11-cv-06119) (the "Vicuña Action"), as a proposed class action, asserting claims under California Civil Code § 1750 *et seq.* (Consumers Legal Remedies Act or "CLRA"), under California Business and Professions Code § 17200 *et seq.* (Unfair Competition Law or "UCL"), under  California Business and Professions Code § 17500 *et seq.* (False Advertising Law or "FAL"), for Breach of Express Warranty, Negligent Misrepresentation, and for Unjust Enrichment.

On February 29, 2012, Plaintiff Eckstein commenced an action entitled *Eckstein v. Alexia Foods, Inc.* (United States District Court, Eastern District of New York, Case No. 12-cv-00976-CBA-RML) (the "Eckstein Action"), as a proposed class action, asserting claims under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*), under the New York Deceptive Trade Practice Act, and for Breach of Express Warranty, Negligence, and Unjust Enrichment.  On March 26, 2012, pursuant to a joint motion of the parties, the United States District Court for the Eastern District of New York transferred the *Eckstein* Action to the Northern District of California.

On May 9, 2012, the Court ordered that the Eckstein Action be consolidated with the Vicuña Action, and be entitled *In re Alexia Foods, Inc. Litigation*, Case No. 11-cv-06119, and additionally ordered that Faruqi & Faruqi, LLP and Baron & Budd, P.C. be appointed Co-Lead

1    Counsel for plaintiffs and the proposed class.   (The resulting consolidated action hereinafter is

2    referred to as the "Action").

3            On May 9, 2012, Plaintiffs filed a Consolidated Class Action Complaint (the "Consolidated

4    Complaint"), asserting claims set forth in the previously filed complaints, including under the

5    CLRA, the UCL and the FAL, New York Deceptive Trade Practice Act, and for Breach of Express

6    Warranty, Negligent Misrepresentation, and Unjust Enrichment.   ConAgra answered the

7    Consolidated Complaint on May 29, 2012, denying liability.

8            ConAgra is the proper party defendant in the Action, and ConAgra has been substituted as

9    Defendant in the Action, and is party to this Settlement Agreement.

10           After the filing of the respective actions, Plaintiffs by and through their respective counsel,

11   conducted a thorough examination and investigation of the facts and law relating to the matters in

12   this Action, including, but not limited to, engaging in discovery, review and analysis of certain

13   documents and data produced by ConAgra, and analysis of an assessment of disodium dihydrogen

14   pyrophosphate and the Alexia Products, which was conducted by a Professor of Food Science and

15   Technology at the direction of Class Counsel.   Class Counsel also evaluated the merits of all

16   Parties' contentions and evaluated this Settlement, as it affects all Parties, including Settlement

17   Class Members.   Plaintiffs and Class Counsel, after taking into account the foregoing, along with

18   the risks and costs of further litigation, are satisfied that the terms and conditions of this Settlement

19   are fair, reasonable and adequate, and that this Settlement is in the best interest of the Settlement

20   Class Members.   As a result of this extensive investigation and the extensive negotiations, the

21   parties reached the proposed Settlement, and the Settlement Agreement was fully executed by the

22   Parties in May 2013 and by their counsel in June 2013.

23           ConAgra, while denying all allegations of wrongdoing and disclaiming all liability with

24   respect to all claims, considers it desirable to resolve the Action on the terms stated herein in order

25   to avoid further expense, inconvenience and burden and, therefore, has determined that this

26   Settlement on the terms set forth herein is in ConAgra's best interests.

27

28

### III.   THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. Cal. Processors, Inc.* 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837 (1978).  If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual for Complex Litigation* § 30.41 at 236-38 (3d ed.) (hereinafter "*Manual*").  The purpose of a preliminary approval hearing is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Id.* (quoting *Newberg on Class Actions* § 11.25 (1992)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See Dunk v. Ford Motor Co.,* 48 Cal. App. 4th 1794, 1801 (1996).

Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982, *cert. denied,* 459 U.S. 1217 (1983)); *Manual* §23.11 at 166:

> Beginning with the first [pretrial] conference, and from time to time throughout the litigation, the court should encourage the settlement process. The judge should raise the issue of settlement at the first opportunity, inquiring whether any discussions have taken place or might be scheduled. As the case progresses, and the judge and counsel become better informed,

the judge should continue to urge the parties to consider and reconsider their positions on settlement in light of current and anticipated developments.

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Ultimately, however, the court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate. *See In re Syncor*, 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement. "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

Factors to be considered by the court in evaluating a proposed settlement may include, among others, some or all of the following: the experience and views of counsel; the risks, complexity, expense and likely duration of continued litigation; the strengths of plaintiff's case; the amount offered in settlement; and the stage of proceedings. *See id.*

In evaluating preliminarily the adequacy of a proposed settlement, particular attention should be paid to the process of settlement negotiations. Here, the negotiations were conducted by experienced class action counsel. Thus, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the court is entitled to rely heavily upon their opinion. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

1    In sum, a compromise must be viewed in the circumstances in which it was achieved. In

2    the final analysis, that decision is committed to the sound discretion of the court.

3    **IV.   TERMS OF THE PROPOSED SETTLEMENT**

4    The Parties reached agreement on the terms of the proposed settlement through a vigorous

5    debate of legal and factual theories by counsel and extensive arm's-length negotiations. The

6    proposed Settlement Class consists of all residents of the United States of America who, at any

7    time between December 6, 2007, and the Preliminary Approval Date, purchased any of the Alexia

8    Products (i.e. "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," "Mashed

9    Potatoes Red Potatoes with Garlic & Parmesan," "Waffle Fries," "Harvest Sauté," "Italian Sauté,"

10   "Sauté Sweets," and "Potato Bites"). Excluded from this definition are: ConAgra; all of

11   ConAgra's past and present respective parents, subsidiaries, divisions, affiliates, persons and

12   entities directly or indirectly under its or their control in the past or in the present; ConAgra's

13   respective assignors, predecessors, successors and assigns; and the past or present partners,

14   shareholders, managers, members, directors, officers, employees, agents, attorneys, insurers,

15   accountants and representatives of any and all of the foregoing; and any government entities.

16   Settlement Class Members who exclude themselves from the Settlement, pursuant to the

17   procedures set forth in Section V of the Settlement Agreement, shall no longer thereafter be

18   Settlement Class Members and shall not be bound by the Settlement Agreement and shall not be

19   eligible to make a claim for any benefit under the terms of the Settlement Agreement.

20   **A.   Benefit to Settlement Class Members from the Settlement Fund**

21   Under the Settlement, ConAgra has agreed to reformulate the ingredients in the Alexia

22   Products as follows: "For as long as ConAgra chooses to sell the Alexia Products, ConAgra will

23   use citric acid or other naturally-sourced compound in the Alexia Products, rather than disodium

24   dihydrogen pyrophosphate. If the Food and Drug Administration determines in the future that

25   products containing disodium dihydrogen pyrophosphate can be labeled 'natural,' ConAgra

26   reserves the right to use disodium dihydrogen pyrophosphate in the Alexia Products." *See*

27   Settlement Agreement ¶ 2.11.

28

Additionally, the Settlement Agreement provides for monetary relief to the proposed Settlement Class by, among other things, requiring ConAgra to disburse up to $3,200,000.00, consisting of a Cash Settlement Fund in an amount up to two million five hundred thousand dollars ($2,500,000) as well as a Voucher Settlement Fund in the amount of seven hundred thousand dollars ($700,000).  *See* Settlement Agreement ¶¶ 1.25(a)-(b); 2.1(a)-(b); 2.2.

As part of the monetary relief, each Settlement Class Member shall be entitled to choose one of the following Settlement benefits: (1) a cash payment of $3.50 for each Alexia Product purchased, up to a maximum of 10 products and $35.00 in cash; (2) two food vouchers, up to a maximum savings of $3.75 per voucher per product, for each Alexia Product purchased, up to a maximum of 10 products and $75.00 in food vouchers; or (3) a combination of cash and vouchers for up to 10 products total.  *See* Settlement Agreement ¶ 2.4.

For a Claimant making a claim for the purchase of *five or fewer* Alexia Products, Claimant must include information in the claim form—completed online or in hard copy mailed to the Settlement Administrator—confirming, under penalty of perjury, as follows: (i) the specific Alexia Product(s) purchased; and (ii) that the purchase was made within the Class Period.  For a Claimant making a claim for the purchase of *six or more* Alexia Products, Claimant must submit a receipt or receipts showing each Alexia-Product purchase on which the claim is based, or other similar documentation that reflects an eligible purchase (e.g. retailer card statement or product packaging). *See* Settlement Agreement ¶ 2.5.

Within 120 days following the completion of distribution of cash and food vouchers to Claimants, any remaining cash value in the Cash Settlement Fund will be combined with any remaining food voucher value in the Voucher Settlement Fund (which shall together comprise the "Combined Residual Fund").  ConAgra shall thereafter distribute to consumers food vouchers for Alexia-Branded Products, valued at $3.75 each, with a cumulative retail savings value equal to the value of the Combined Residual Fund less an amount equal to the Residual Voucher Distribution Costs.  *See* Settlement Agreement ¶ 2.9.

The vouchers will be distributed in an amount sufficient to insure that the number of $3.75 vouchers actually redeemed by Class Members over a two year period will result in a cumulative

retail savings equal to the value of the Combined Residual Fund.  If, despite the Parties' efforts, a residual voucher redemption rate of 100% has not been achieved at the end of a two year period (measured from the initial date on which residual food vouchers are distributed and ending on the final expiration date of any such residual food voucher so distributed), then ConAgra shall distribute to Feeding America (National Office, 36 East Wacker Drive, Chicago, IL 60601) free Alexia-Branded Products, with a value equaling any remaining but undistributed value in the Combined Residual Fund.  Alexia-Branded Products distributed to Feeding America shall, for purposes of such distribution, be valued based on the latest 13-week average base price per pound of Alexia frozen potatoes as defined by IRI, Inc.  In connection with such charitable distribution, ConAgra shall request that Feeding America direct as much as possible of the donated food to programs that comprise and/or are affiliated with Feeding America's Nutrition and Feeding initiative, which seeks to promote better nutrition and increased access to healthful foods for those who struggle with hunger.  *See* Settlement Agreement ¶ 2.10.

### B.      Release And Discharge Of Claims

The Settlement Agreement provides for a specific release of claims or causes of action based on or related to the Alexia Products as described and/or alleged in the Consolidated Complaint in this Action.  The release will forever terminate this litigation involving ConAgra and the Plaintiffs in this Action, once the Settlement becomes effective as defined in the Settlement Agreement. *See* Settlement Agreement ¶ 6.1.

### C.      Payment Of Attorneys' Fees And Expenses

Subject to Court approval, ConAgra will pay Class Counsel Court-approved fees and expenses up to a maximum of $800,000.  The attorneys' fees were negotiated separately and apart from the other terms of the agreement.  The payment by ConAgra of Class Counsel's fees and expenses, to the extent approved and ordered by the Court, will be from the Cash Settlement Fund. *See* Settlement Agreement ¶ 3.1.

### D.      Compensation For The Class Representatives

In addition to the individual relief discussed above, ConAgra has also agreed to pay incentive awards to the Class Representatives, Leandro Vicuña, Pere Kyle, and David Eckstein, not

to exceed $5,000 per Representative Plaintiff.  The payment by ConAgra of Class Representatives' incentive awards, to the extent approved and ordered by the Court, will be from the Cash Settlement Fund.  *See* Settlement Agreement ¶ 3.2.

### E.      Payment Of Notice And Administrative Fees

ConAgra shall pay from the Cash Settlement Fund to the administrator handling the administration of the Settlement the reasonable costs and expenses of providing notice to the Class in accordance with the Settlement Agreement.[1] *See* Settlement Agreement ¶ 4.5.

## V.      THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER

### A.      The Settlement Should Be Preliminarily Approved Because It Satisfies Accepted Criteria

It is well established that the law favors the compromise and settlement of class action suits: "[S]trong judicial policy favors settlements . . ." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) (original ellipsis omitted).  This is particularly true where "class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *In re Veritas Software Corp. Sec. Litig.*, No. 05-17393, 2007 U.S. App. LEXIS 17623, at *25 (9th Cir. July 25, 2007) ("[T]he district court has substantial discretion in approving the details of a class action settlement").  Courts, however, must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.  *Accord*, Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate").

---

[1] Notice costs also include notification of the Attorney General of the United States and the attorney general of each state where Class members reside in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

To grant preliminary approval of this class action Settlement, the Court need only find that the Settlement falls within the range of possible approval.  *See, e.g.*, *Livingston v. Toyota Motor Sales USA*, No. C-94-1377-MHP, 1995 U.S. Dist. LEXIS 21757, at *24 (N.D. Cal. June 1, 1995) ("[t]he proposed settlement must fall within the range of possible approval"); *see also* 4 Alba Conte and Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002).  The *Manual for Complex Litigation,* § 21.632 (4th ed. 2004) characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties.

Here, as discussed above, the Settlement should be preliminarily approved because it clearly falls "within the range of possible approval."   *Alaniz¸* 73 F.R.D. at 273.    It is non-collusive, fair, and reasonable.  The likelihood that a greater result could be achieved at trial is remote.  The Settlement achieves *complete* injunctive relief in the form of an reformulation of ingredients in the Alexia Products.   Additionally, the Settlement will provide a significant monetary benefit to Settlement Class Members by providing them with $3.50 in cash for each Alexia Product purchased during the Settlement Class Period or food vouchers entitling the redeeming Settlement Class Member up to a maximum savings of $7.50 per voucher per Alexia Product purchased.

At the same time, the Settlement eliminates the substantial risk and delay of litigation. Although Plaintiffs believe their claims have merit, they recognize that they face significant legal, factual, and procedural obstacles to recovery.  Although ConAgra denies any wrongdoing and denies any liability to the Plaintiffs or any members of the Class, and though Plaintiffs and Class Counsel had confidence in the claims, a favorable outcome is not assured.  By settling, Plaintiffs and the Settlement Class avoid these risks, as well as the delays and risks of a lengthy trial and appellate process.  The Settlement will provide Settlement Class Members with monetary benefits that are immediate, certain and substantial, and avoid the obstacles that might have prevented them from obtaining relief.

In light of the relief obtained, the magnitude and risks of the litigation and the legal standards set forth above, the Court should allow notice of the settlement to be sent to the

Settlement Class so that class members can express their views on it.  The Court should conclude that the Settlement's terms are "within the range of possible approval." *Id*.

**B.    The Proposed Settlement Class Should Be Certified**

The Settlement Class consists of all residents of the United States of America who, at any time between December 6, 2007, and the Preliminary Approval Date, purchased any of the referenced Alexia Products (i.e. "Sauté Reds," "Mashed Potatoes Yukon Gold Potatoes & Sea Salt," "Mashed Potatoes Red Potatoes with Garlic & Parmesan," "Waffle Fries," "Harvest Sauté," "Italian Sauté," "Sauté Sweets," and "Potato Bites").  This Court has not yet certified this case as a class action.  For settlement purposes only, the parties and their counsel request that the Court provisionally certify the Settlement Class.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.   In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  For the reasons below, this Class meets the requirements of Rule 23(a) and (b).

**1.    The Settlement Class Satisfies Rule 23(a)**

*a.    Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."  *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).   Here, the proposed Settlement Class is comprised of thousands of consumers who purchased the Alexia Products – a number that obviously satisfies the numerosity requirement.   Accordingly, the proposed settlement Class is so numerous that joinder of their claims is impracticable.

1

                                b.      *Commonality*

2        Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  *See*

3    Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiff and class members' claims

4    "depend on a common contention," "capable of class-wide resolution . . . meaning that

5    determination of its truth or falsity will resolve an issue that is central to the validity of each one of

6    the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because

7    the commonality requirement may be satisfied by a single common issue, it is easily met.   1

8    Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 at 3-50 (1992).

9        There are ample issues of both law and fact here that are common to the members of the

10   class.  Indeed, all of the Settlement Class Members' claims arise from a common nucleus of facts

11   and are based on the same legal theories.  The Plaintiffs allege that Defendant misled consumers by

12   labeling certain frozen potato products "natural" or "all natural," when in fact those products

13   contained the ingredient disodium dihydrogen pyrophosphate to retain the color of the potatoes,

14   which ingredient Plaintiffs' allegations preclude those products from properly being labeled as

15   "natural" or "all natural."   Here, all of the Settlement Class Members purchased the Alexia

16   Products.  Commonality is satisfied here, for settlement purposes, by the existence of these

17   common factual issues.  *See Arnold v. United Artists Theatre Circuit, Inc.* 158 F.R.D. 439, 448

18   (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common

19   discriminatory practices").

20       Second, Plaintiffs' claims are brought under legal theories common to the class as a whole.

21   Alleging a common legal theory is alone enough to establish commonality.   *See Morgan v.*

22   *Laborers Pension Trust Fund*, 81 F.R.D. 669, 676 (N.D. Cal. 1979) (commonality met based on

23   whether operation of the eligibility structure of Trust Fund's pension plan violated ERISA).  Here,

24   all of the legal theories and causes of action asserted by Plaintiffs are common to all Settlement

25   Class Members.  Especially since there are virtually no issues of law which affect only individual

26   members of the class, common issues of law clearly predominate over individual ones.  Thus,

27   considering the nature of the issues and facts that bind each class member together, commonality is

28   satisfied.

1

*c.*     _Typicality_

2      Rule 23(a)(3) requires that the claims of the representative plaintiff be "typical of the claims

3   . . . of the class."   *See* Fed. R. Civ. P. 23(a)(3).   "Under the rule's permissive standards,

4   representative claims are 'typical' if they are reasonably co-extensive with those of absent class

5   members; they need not be substantially identical."   *See Hanlon*, 150 F.3d at 1020.   In short, to

6   meet the typicality requirement, the representative plaintiff simply must demonstrate that the

7   members of the settlement class have the same or similar grievances.   *Gen. Tel. Co. of the Sw.v.*

8   *Falcon*, 457 U.S. 147, 161 (1982).

9      In the instant action, Plaintiffs' claims are typical of those of the Settlement Class.   Like

10   those of the Settlement Class, their claims arise out of the allegations that ConAgra misled

11   consumers by labeling certain frozen potato products "natural" or "all natural," when in fact those

12   products contained the ingredient disodium dihydrogen pyrophosphate, which Plaintiffs alleged

13   precludes those products from properly being labeled as "natural" or "all natural."   Each Plaintiff

14   purchased an Alexia Product.   Plaintiffs have precisely the same claims as the Settlement Class,

15   and must satisfy the same elements of each of their claims, as must other Settlement Class

16   Members.   Supported by the same legal theories, Plaintiffs and all Settlement Class Members share

17   claims based on the same alleged course of conduct.   Plaintiffs and all Settlement Class Members

18   have been injured in the same manner by this conduct.   Therefore, Plaintiffs satisfy the typicality

19   requirement.

20

*d.*     _Adequacy_

21      The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the

22   representative parties "fairly and adequately protect the interests of the class."   *See* Fed. R. Civ. P.

23   23(a)(4).   A plaintiff will adequately represent the class where:   (1) plaintiffs and their counsel do

24   not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel

25   prosecute the action vigorously on behalf of the class.   *See Staton v. Boeing Co.*, 327 F.3d 938, 958

26   (9th Cir. 2003).   Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-

27   length.   2 *Newberg on Class Actions, supra*, §11.28, at 11-59.

28

---

1    Class Counsel have vigorously and competently pursued the Settlement Class Members'

2    claims.  The arm's-length settlement negotiations that took place demonstrate that Class Counsel

3    adequately represent the Settlement Class.   Moreover, Plaintiffs and Class Counsel have no

4    conflicts of interests with the Settlement Class.   Rather, Plaintiffs, like each absent Settlement

5    Class Member, have a strong interest in proving ConAgra's common course of conduct,

6    establishing its unlawfulness and obtaining redress.  In pursing this litigation, Class Counsel, as

7    well as the Plaintiffs, have advanced and will continue to advance and fully protect the common

8    interests of all members of the Class.  Class Counsel have extensive experience and expertise in

9    prosecuting complex class actions.   Class Counsel are active practitioners who are highly

10   experienced in class action, product liability, and consumer fraud litigation.  *See* Pifko Decl. Exhs.

11   2 and 3 for Class Counsel's firm resumes.  Faruqi & Faruqi, LLP and Baron & Budd, P.C. were

12   appointed Co-Lead Class Counsel for the proposed Class on May 9, 2012.   Accordingly, Rule

13   23(a)(4) is satisfied.

14              **2.       The Settlement Class Satisfies Rule 23(b)(3)**

15          In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the

16   three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research*

17   *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).   Under Rule 23(b)(3), a class action may be

18   maintained if "the court finds that the questions of law or fact common to the members of the class

19   predominate over any questions affecting only individual members, and that a class action is

20   superior to other available methods for fairly and efficiently adjudicating the controversy."  *See*

21   Fed. R. Civ. P. 23(b)(3).   Certification under Rule 23(b)(3) is appropriate and encouraged

22   "whenever the actual interests of the parties can be served best by settling their differences in a

23   single action."  *Hanlon*, 150 F.3d at 1022.

24                    a.      *Common Questions Of Law And Fact Predominate*

25          The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because

26   questions common to the Settlement Class Members predominate over questions affecting only

27   individual Settlement Class Members.   Predominance exists "[w]hen common questions present a

28   significant aspect of the case and they can be resolved for all members of the class in a single

1    adjudication." *Hanlon*, 150 F.3d at 1022.  As the United States Supreme Court has explained, when

2    addressing the propriety of Settlement Class certification, courts take into account the fact that a

3    trial will be unnecessary and that manageability, therefore, is not an issue.  *Amchem*, 521 U.S. at

4    620.

5            In this case, common questions of law and fact exist and predominate over any individual

6    questions, including, *inter alia*:  (1) whether ConAgra's marketing and sale of the Alexia Products

7    was illegal; (2) whether ConAgra engaged in unlawful, unfair, misleading, or deceptive business

8    acts or practices; (3) whether ConAgra engaged in consumer fraud, deceptive trade practices, or

9    other unlawful acts; (4) whether ConAgra's conduct was willful or reckless; and (5) whether

10   Plaintiffs and Settlement Class Members are entitled to an damages, restitution, injunctive and/or

11   monetary relief, and if so, the amount and nature of such relief.  These issues can be resolved for

12   all members of the proposed Settlement Class in a single adjudication.  As such, the answers to

13   these common questions that resulted from ConAgra's alleged conduct are the primary focus and

14   central issues of this class action and thus predominate over any individual issues that may exist.

15                    b.      *A Class Action Is The Superior Mechanism For*
16                            *Adjudicating This Dispute*

17           The class mechanism is superior to other available means for the fair and efficient

18   adjudication of the claims of the Settlement Class Members.  Each individual Settlement Class

19   Member may lack the resources to undergo the burden and expense of individual prosecution of the

20   complex and extensive litigation necessary to establish ConAgra's liability.  Individualized

21   litigation increases the delay and expense to all parties and multiplies the burden on the judicial

22   system presented by the complex legal and factual issues of this case.  Individualized litigation also

23   presents the potential for inconsistent or contradictory judgments.  In contrast, the class action

24   device presents far fewer management difficulties and provides the benefits of single adjudication,

25   economy of scale, and comprehensive supervision by a single court on the issue of ConAgra's

26   liability.  Class treatment of the liability issues will ensure that all claims and claimants are before

27   this Court for consistent adjudication of the liability issues.

28

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23 (b)(3)(D), for the proposal is that there be no trial."). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

### C. The Proposed Notice Program Constitutes Adequate Notice And Should Be Approved

Once preliminary approval of a class action settlement is granted, notice must be directed to class members. For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed. R. Civ. P. 23(e)(1)

When a court is presented with a class, the class certification notice and notice of settlement may be combined in the same notice. *Manual* §21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows the settlement class members to decide whether to opt out of or participate in the class and/or to object to the settlement and argue against final approval by the court. *Id*.

The proposed forms of notice, attached as Exhibits B and C to the Settlement Agreement, satisfy the above criteria. The notices accurately inform Settlement Class Members of the salient terms of the Settlement Agreement, the Settlement Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.

The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and Due Process. The language of the proposed notices and accompanying claim form is plain and easy to understand, providing neutral and objective information about the nature of the Settlement.

1    Individual Settlement Class Members cannot be identified through reasonable effort due to

2    the nature of the consumer product at issue.  Therefore, Class Notice shall be provided as set forth in

3    the Media Plan, attached to the Settlement Agreement as Exhibit D.  The Settlement Administrator will

4    cause the summary notice to be published once in <u>People Magazine</u>, once in <u>USA Weekend</u>, and

5    once in <u>Parade</u>.  Additionally, notice of the Settlement will be provided on the Facebook.com and

6    24/7 Network websites.   This plan will deliver an estimated 75.03% reach against "Frozen

7    Vegetable Users."

8    This proposed method of giving notice (similar if not identical to the method used in

9    countless other class actions) is appropriate because it provides a fair opportunity for members of

10   the Settlement Class to obtain full disclosure of the conditions of the Settlement Agreement and to

11   make an informed decision regarding the proposed Settlement.  Thus, the notices and the

12   procedures embodied in the notices amply satisfy the requirements of due process.  The actual

13   costs and expenses of the Settlement Administrator, which have been estimated by the Settlement

14   Administrator to be $715,000 and will not exceed $800,000, will be paid from the Cash Settlement

15   Fund in accordance with the Settlement Agreement.

16   **VI.    CONCLUSION**

17   For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary

18   approval to the Settlement Agreement, provisionally certify the Settlement Class, approve the

19   proposed notice plan and enter the Preliminary Approval Order in the form submitted herewith.

20   Dated: June 4, 2013                          Respectfully Submitted,

21                                                **BARON & BUDD, P.C.**

22                                                By: _____/s/ Mark Pifko_____
                                                        Mark Pifko
23
                                                 Roland Tellis (State Bar No. 186269)
24                                               Mark Pifko (State Bar No. 228412)
                                                 Natasha Mehta (State Bar No. 272241)
25                                               15910 Ventura Boulevard
                                                 Encino, CA 91436
26                                               Telephone: (818) 839-2333
                                                 Facsimile:  (818) 986-9698
27

28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FARUQI & FARUQI, LLP**
David E. Bower (State Bar No. 119546)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

*Plaintiffs' Co-Lead Interim Class Counsel and Co-Counsel for Class Representative*