1  **BARON & BUDD, P.C.**
   Roland Tellis (State Bar No. 186269)
2  Mark Pifko (State Bar No. 228412)
   Natasha Mehta (State Bar No. 272241)
3  15910 Ventura Boulevard
   Encino, CA 91436
4  Telephone: (818) 839-2333
   Facsimile: (818) 986-9698
5
   **FARUQI & FARUQI, LLP**
6  David E. Bower (State Bar No. 119546)
   10866 Wilshire Blvd., Suite 1470
7  Los Angeles, CA 90067
   Telephone: (424) 256-2884
8  Facsimile: (424) 256-2885

9  *Plaintiffs' Counsel and Counsel for Settlement Class*

10 [Additional counsel listed on signature page]

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          OAKLAND DIVISION

14

15                                        CASE NO.: 4:11-cv-06119-PJH

   In re: ALEXIA FOODS, INC. LITIGATION
16                                        **PLAINTIFFS' NOTICE OF MOTION
                                          AND MOTION FOR AN AWARD OF
17                                        ATTORNEYS' FEES, COSTS AND
                                          EXPENSES AND INCENTIVE FEES
18                                        TO CLASS REPRESENTATIVES;
                                          MEMORANDUM OF LAW**

19                                        Date: December 11, 2013
                                          Time: 9:00 A.M.
20                                        Courtroom: Courtroom 3, 3rd Floor
                                          Judge: Hon. Phyllis J. Hamilton
21

22

23

24

25

26

27

28
─────────────────────────────────────────────
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES AND
INCENTIVE FEES TO CLASS REPRESENTATIVES; MEMORANDUM OF LAW
Case No: 11-CV-06119-PJH

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 11, 2013 at 9:00 a.m. before the Honorable Phyllis J. Hamilton, United States District Court Judge for the Northern District of California, 1301 Clay Street, Oakland, California 94612, Plaintiffs by and through the undersigned counsel of record will move and hereby do move for an order awarding attorneys' fees, litigation expenses, and Plaintiffs' incentive fees, in accordance with the Class Settlement Agreement.

This motion is based on upon this Notice of Motion, Motion, and Memorandum in support thereof, the declarations filed in support thereof, the Stipulation of Settlement filed on June 4, 2013 and the amendment thereto filed on July 25, 2013, the complete files and records in this action, and such additional papers and argument as may be presented at or in connection with the hearing.

Because this motion is brought in accordance with the Class Settlement Agreement between the parties, Plaintiffs do not anticipate any opposition to this motion by the Defendant.

Dated: October 28, 2013            Respectfully Submitted,

**BARON & BUDD, P.C.**

By: ___/s/Roland Tellis_____

Roland Tellis (State Bar No. 186269)
Mark Pifko (State Bar No. 228412)
Natasha Mehta (State Bar No. 272241)
15910 Ventura Boulevard
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

**FARUQI & FARUQI, LLP**
David E. Bower (State Bar No. 119546)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

*Plaintiffs' Counsel and Counsel for Settlement Class*

2

# TABLE OF CONTENTS

MEMORANDUM OF LAW ............................................................................................. 1

I.    INTRODUCTION ................................................................................................. 1

II.   LITIGATION AND SETTLEMENT HISTORY ................................................ 3

    A.    Relevant Procedural History ................................................................... 3

    B.    Plaintiffs' Discovery Efforts ................................................................... 5

    C.    Mediation and Settlement Negotiations ................................................. 6

    D.    Class Counsel Obtained Exceptional Benefits for the Class .................. 6

III.  CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS
      FAIR AND REASONABLE ................................................................................ 7

    A.    The Requested Fee-And-Expense Amount Was Agreed Upon By
          Sophisticated Parties After Arm's-Length Negotiations ......................... 7

    B.    Class Counsel's Requested Fees Are Reasonable Under The Percentage
          Of The Class Benefit Approach ............................................................... 9

        1.    Class Counsel's Fee Request Is Within The 25% Benchmark
             Established By The Ninth Circuit And Is Reasonable .............................. 10

        2.    Class Counsel Achieved Excellent Results For The Class ...................... 11

        3.    Plaintiffs' Claims Carried A Substantial Amount of Risk ....................... 12

        4.    Prosecuting This Case Required Substantial Skill, Resulting In
             The Highest Quality Of Representation For The Class ............................ 13

        5.    Courts Have Ordered Similar Or Greater Percentage Fees Awards
             In Consumer Class Actions ..................................................................... 15

        6.    Reaction of the Class ............................................................................... 16

    C.    Lodestar Cross-Check Also Supports The Requested Fee Award ........... 16

    D.    The Court May Alternatively Grant The Requested Attorneys' Fees
          Under The Lodestar Method ................................................................... 18

         1.    Class Counsel Have Spent A Reasonable Number Of Hours
             On This Litigation At A Reasonable Hourly Rate .................................. 18

             a.    Novelty And Complexity Of This Litigation ................................. 20

             b.    Class Counsel Provided Exceptional Representation
                  Prosecuting This Complex Case .................................................... 21

i

c.     Class Counsel Obtained Excellent Class Benefits ........................ 22

d.     Class Counsel Faced A Substantial Risk Of Nonpayment ........... 22

IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY
INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF
OF THE CLASS ............................................................................................... 23

V.    THE REQUESTED INCENTIVE AWARDS FOR CLASS
REPRESENTATIVES ARE REASONABLE AND STANDARD ................................. 24

VI.   CONCLUSION ............................................................................................... 25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND
INCENTIVE FEES TO CLASS REPRESENTATIVES; MEMORANDUM OF LAW
Case No:  11-CV-06119-PJH

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5
*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................................15

6
*In re Beverly Hills Fire Litig.,*
    639 F. Supp. 915 (E.D. Ky. 1986) ...................................................................................19

7
8
*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ..........................................................................................17

9
10
*Blum v. Stenson,*
    465 U.S. 886 (1984).........................................................................................................20

11
*Bond v. Ferguson Enters.,*
    No. 09-01-01662, 2011 U.S. Dist. LEXIS 77692 (E.D. Cal. July 18, 2011)...............25

12
13
*In re Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green, P.A.,*
    778 F.2d 890 (1st Cir. 1985)......................................................................................19, 20

14
15
*Caudle v. Bristow Optical Co.,*
    224 F.3d 1014 (9th Cir. 2000) ........................................................................................17

16
*Cazares v. Saenz,*
    208 Cal. App. 3d 279 (1989) .............................................................................................8

17
18
*In re Cenco Inc. Sec. Litig.,*
    519 F. Supp. 322 (N.D. Ill. 1981) ..................................................................................19

19
20
*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) .............................................................................................7

21
*Craft v. Cnty. of San Bernardino,*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) .....................................................................15, 17

22
23
*In re Critical Path, Inc. Sec. Litig.,*
    No. C. 01-00551, 2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) ...............12

24
25
*Eckstein v. Alexia Foods, Inc.,*
    Case No. 12-cv-00976-CBA-RML (E.D.N.Y.) ............................................................3, 4

26
*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992)........................8

27

28

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
    307 F.3d 997 (9th Cir. 2002) ...........................................................................9, 17

*In re Haier Freezer Consumer Litigation*,
    Case No. C11-02911 EJD, ECF No. 90 (N.D. Cal. Oct. 25, 2013) ........................18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..............................................................9, 10, 17, 18

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...............................................................................24

*Harris v. Vector Mktg. Corp.*,
    No. 08-5198, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb. 6, 2012) ...................25

*Hartless v. Clorox Co.*,
    273 F.R.D. 630, 645 (S.D. Cal. 2011),
    *aff'd*, 473 F. App'x. 716 (9th Cir. 2012) ...............................................................9

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .........................................................................................7, 19

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
    02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ..........16

*Ingalls v. Hallmark Mktg. Corp.*,
    No. 08-CV-4342 VBF,
    2009 U.S. Dist. LEXIS 131081 (C.D. Cal. Oct. 16, 2009) ...................................16

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...............................................................................8

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ..........................................................................18, 20

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976) .......................................................................15

*Koz v. Kellogg Co.*,
    No. 09-CV-1786-IEG (WMC),
    2013 U.S. Dist. LEXIS 129205 (S.D. Cal. Sept. 10, 2013) ...................................16

*Lealao v. Beneficial Cal., Inc.*,
    82 Cal. App. 4th 19 (2000) ..............................................................................8, 10

*Martin v. AmeriPride Servs., Inc.*,
    No. 08-CV-440-MMA (JMA),
    2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011)........................................15

iv

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................13

*Melendres v. City of L.A.*,
    45 Cal. App. 3d 267 (1975) ..................................................................8

*In Re Mercury Interactive Corp. Securities Litigation*,
    618 F.3d 988 (9th Cir. 2010) ..............................................................3

*Morales v. City of San Rafael*,
    96 F.3d 359 (9th Cir. 1996) ................................................................19

*Morris v. Lifescan, Inc.*,
    54 F. App'x 663 (9th Cir. 2003) .......................................................9, 15

*Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*,
    No. 86-1104, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) .................20

*Mun. Auth. of Bloomsburg v. Pennsylvania*,
    527 F. Supp. 982 (M.D. Pa. 1981) ......................................................19

*In re Netflix Privacy Litig.*,
    No. 5:11-CV-00379-EJD,
    2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ...........................13

*Nobles v. MBNA Corp.*,
    No. C 06-3723 CRB,
    2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009) ...........................15

*In re OmniVision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................................14, 16

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .............................................................9, 15

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..............................................................10

*Rabin v. Concord Assets Grp., Inc.*,
    No. 89 CIV. 6130 (LBS),
    1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) ..........................19

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) .....................................................19

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..............................................................24

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND
INCENTIVE FEES TO CLASS REPRESENTATIVES; MEMORANDUM OF LAW
Case No: 11-CV-06119-PJH

*Singer v. Becton Dickinson & Co.*,
No. 08-CV-821- IEG (BLM),
2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) ........................................16

*State of Florida v. Dunne*,
915 F.2d 542 (9th Cir. 1990) ........................................................................9

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ....................................................................9, 24

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ...........................................................24, 25

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ..................................................................15

*Vicuña v. Alexia Foods, Inc.*,
Case No. 11-cv-06119 (N.D. Cal.) ..............................................................3, 4

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ........................................................................9

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ...............................................................15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .......................................................................23

*Williams v. MGM-Pathe Commc'ns Co.*,
129 F.3d 1026 (9th Cir. 1997) .....................................................................15

*Young v. Polo Retail, LLC*,
No. C-02-4546 VRW,
2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ....................................10

**Other Authorities**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d ed. 1992)...............19

*Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) .............................................10

vi

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiffs Leonardo Vicuña ("Vicuña"), Pere Kyle ("Kyle"), and David Eckstein ("Eckstein") (collectively, "Plaintiffs" or "Class Representatives")[1] and Baron & Budd, P.C., and Faruqi & Faruqi, LLP (collectively, "Class Counsel") respectfully submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of their litigation costs and expenses, and payment of "incentive" awards to the Class Representatives.

As detailed in Plaintiffs' concurrently-filed motion in support of final approval of the proposed class settlement, Class Counsel achieved an excellent result by negotiating with Defendant ConAgra Foods, Inc. ("ConAgra" or "Defendant") a nationwide class settlement on behalf of purchasers of certain frozen potato products (the "Settlement") that provides for real, immediate, and substantial cash and non-monetary benefits, as embodied in the Class Action Settlement Agreement (the "Settlement Agreement"). *See* Ex. 1 to Pifko Decl. in Support of Motion for Preliminary Approval, ECF No. 46-1. Although the claims period for this case has not yet concluded, to date, *over 62,000 claims have been made, and not a single Class Member has objected.*

Specifically, as a direct result of the efforts of Plaintiffs' counsel, ConAgra has agreed to change the formulation of the products to eliminate the chemical compound at issue. *See* Settlement Agreement ¶ 2.11 ("For as long as ConAgra chooses to sell the Alexia Products, ConAgra will use citric acid or other naturally-sourced compound in the Alexia Products, rather than disodium dihydrogen pyrophosphate.") Additionally, the Settlement Agreement provides for monetary relief to the proposed Settlement Class by requiring ConAgra to disburse up to $3,200,000, consisting of a Cash Settlement Fund of up to $2,500,000, as well as a Voucher

---

[1] All capitalized terms have the same definition as in the Stipulation of Settlement ("Settlement Agreement"), and its exhibits, which are attached as Exhibit 1 to the Declaration of Mark Pifko, filed concurrently with the Motion for Preliminary Approval, ECF No. 46.

Settlement Fund in the amount of $700,000.  *See* Settlement Agreement ¶¶ 1.25(a)-(b), 2.1(a)-(b), 2.2.

As part of the monetary relief, each Settlement Class Member shall be entitled to choose one of the following Settlement benefits: (1) a cash payment of $3.50 for each Alexia Product purchased, up to a maximum of 10 products and $35.00 in cash; (2) two food vouchers, up to a maximum savings of $3.75 per voucher per product, for each Alexia Product purchased, up to a maximum of 10 products and $75.00 in food vouchers; or (3) a combination of cash and vouchers for up to 10 products total.  *See* Settlement Agreement ¶ 2.4.

As set forth below, Plaintiffs request that the Court approve an award of attorneys' fees and costs in the agreed upon sum of $800,000, to be paid by ConAgra pursuant to the terms of the Settlement.  If awarded, after the deduction of expenses, the requested attorneys' fees represent approximately 24% of the total value of the $3,200,000 Settlement – a reasonable request given the risks of the case and the results achieved.  This method of calculating the fee award, based on a percentage of the fund, is straightforward and fair under the circumstances of the case.  Cross-checking the agreed upon fee request against a lodestar fee calculation validates its reasonableness.  ConAgra has also agreed to pay Class Representatives Vicuña, Kyle, and Eckstein incentive awards of $5,000 each (for a total of $15,000).

Class Counsel have vigorously prosecuted this action since inception and succeeded in obtaining a significant recovery in light of provable damages and litigation risks, and now seek to be compensated for their efforts.  All expenses were carefully and reasonably expended and should be reimbursed.  Furthermore, Plaintiffs respectfully submit that the reaction of the class strongly supports the requested fee as over 62,000 claims were received without a single objection to date.

This Motion is being filed during the claims period to ensure that all Settlement Class members have the opportunity to review the basis for Class Counsel's claim for attorneys' fees and costs during the objection period to the Settlement as required by the Ninth Circuit Court of Appeals in *In Re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

2

1    For the reasons set forth herein, the requested fees, expenses, and incentive fees to Class

2    Representatives are reasonable under Ninth Circuit and California case law.  In light of the

3    excellent results achieved on behalf of the Class, Plaintiffs respectfully submit that the Court

4    approve the amounts requested and also agreed to by ConAgra.

5    **II.    LITIGATION AND SETTLEMENT HISTORY**

6        **A.    Relevant Procedural History**

7        On December 5, 2011, Plaintiffs Vicuña and Kyle commenced an action entitled *Vicuña*

8    *v. Alexia Foods, Inc.*, Case No. 11-cv-06119 (N.D. Cal.) (the "*Vicuña* Action"), as a proposed

9    class action, for misleading consumers by labeling certain frozen potato products (the "Alexia

10    Products") "natural" or "all natural," when in fact those products contained the synthetic,

11    chemical compound disodium dihydrogen pyrophosphate ("DDP"), asserting claims under the

12    Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.* ("CLRA"), Unfair

13    Competition Law, California Business & Professions Code §§ 17200 *et seq.* ("UCL"), and False

14    Advertising Law, California Business and Professions Code §§ 17500 *et seq.* ("FAL") for breach

15    of express warranty, negligent misrepresentation, and for unjust enrichment.

16        On February 29, 2012, Plaintiff Eckstein commenced an action entitled *Eckstein v. Alexia*

17    *Foods, Inc.*, Case No. 12-cv-00976-CBA-RML (E.D.N.Y.) (the "*Eckstein* Action"), as a

18    proposed class action, asserting claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §

19    2301 *et seq.*, under the New York Deceptive Trade Practice Act and for breach of express

20    warranty, negligence, and unjust enrichment.  On March 9, 2012, Alexia Foods, Inc.[2] ("Alexia")

21    moved to dismiss Plaintiffs' First Amended Complaint in the *Vicuña* Action.  *See* Motion To

22    Dismiss Plaintiffs' First Amended Complaint, ECF No. 13 ("Motion to Dismiss").  Alexia

23    argued that the plaintiffs' allegations about the meaning of natural ignore the FDA's explicit

24    recognition that "natural" is susceptible to a variety of meanings.  *See id.* at 5:7-9.  Alexia argued

25

26    _____

        [2] ConAgra is the proper party defendant in the Action, and ConAgra has been substituted as

27    Defendant in the Action and is party to the Settlement Agreement.

28

1    that the complaint should be dismissed because Plaintiffs' factual allegations were conclusive

2    and otherwise inadequate, the plaintiffs' claims of deception fail as a matter of law under the

3    reasonable consumer standard, and Plaintiffs' warranty and unjust enrichment claims are

4    separately deficient.  On March 26, 2012, pursuant to a joint motion of the Parties, the United

5    States District Court for the Eastern District of New York transferred the *Eckstein* Action to the

6    Northern District of California.

7          On March 30, 2012, plaintiffs in the *Vicuña* Action responded to Alexia's motion to

8    dismiss.  The plaintiffs argued that Alexia could not establish, as a matter of law, that a

9    reasonable consumer would not find Alexia's unequivocal "all natural" claim to be misleading.

10   *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss First Amended Complaint, ECF No.

11   24.

12         On April 27, 2012, this Court denied Alexia's Motion to Dismiss.  *See* Order Denying

13   Motion to Dismiss, ECF No. 33.  The Court stated that "[b]ecause the question whether a

14   reasonable consumer would likely be deceived by the designation "all natural" is a factual

15   dispute, the court finds that these claims cannot be resolved at this stage of the litigation."

16   *Id.* at 3.

17         On May 9, 2012, the Court ordered that the *Eckstein* Action be consolidated with the

18   *Vicuña* Action, and be entitled *In re Alexia Foods, Inc. Litigation*, Case No. 11-cv-06119, and

19   additionally ordered that Baron & Budd, P.C. and Faruqi & Faruqi, LLP be appointed Co-Lead

20   Counsel for plaintiffs and the proposed class.  (The resulting consolidated action hereinafter is

21   referred to as the "Action").  ECF No. 35.

22         On May 9, 2012, Plaintiffs filed a Consolidated Class Action Complaint (the

23   "Consolidated Complaint"), asserting claims set forth in the previously filed complaints,

24   including under the CLRA, the UCL and the FAL, New York Deceptive Trade Practice Act, and

25   for Breach of Express Warranty, Negligent Misrepresentation, and Unjust Enrichment. ECF No.

26   36.  ConAgra answered the Consolidated Complaint on May 29, 2012, denying liability. ECF

27   No. 41.

28

4

On July 5, 2012, the Court entered an Order substituting ConAgra in place of defendant Alexia because Alexia was acquired by ConAgra and Alexia was "merged out" and dissolved. *See* Joint Stipulation and Order Substituting Defendant ConAgra Foods, Inc. In Place Of Defendant Alexia Foods, Inc., ECF No 43.

The parties reached the proposed Settlement, and the Settlement Agreement was fully executed by the Parties in May 2013 and by their Counsel in June 2013.

On June 4, 2013, Plaintiffs filed a motion for preliminary approval of the Settlement. A hearing concerning Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ECF No. 46 was held on July 10, 2013. Following the hearing, the Court issued a minute order granting Plaintiffs' Motion. ECF No. 50. At the hearing, the Court noted certain potential concerns regarding the class notice and claim form. Accordingly, the agreed to make changes to the Settlement to address the Court's concerns, and detailed those changes in the July 25, 2013 Joint Supplemental Memorandum in Further Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No. 53.

ConAgra, while denying all allegations of wrongdoing and disclaiming all liability with respect to all claims, considered it desirable to resolve the Action on the terms stated in the Settlement Agreement in order to avoid further expense, inconvenience and burden and, therefore, determined that the Parties' Settlement was in ConAgra's best interests.

**B.    Plaintiffs' Discovery Efforts**

Plaintiffs have thoroughly investigated this case. Prior to filing the lawsuit, Plaintiffs conducted a thorough search of publically available sources to verify the scope and nature of the conduct alleged. *See* Declaration of Roland Tellis In Support of Plaintiffs' Motions For Final Approval of Class Action Settlement; and For An Award of Attorneys' Fees, Costs and Expenses, and Incentive Fees To Class Representatives ("Tellis Decl.") at ¶ 8.

After the filing of the respective actions, Plaintiffs, by and through their respective counsel, conducted a thorough examination and investigation of the facts and law relating to the matters in this Action, including, but not limited to, engaging in discovery, review and analysis

5

1   of certain documents and data produced by ConAgra, and analysis of the ingredients in the

2   Alexia Products, an analysis of DDP and the Alexia Products, which was conducted by a

3   Professor of Food Science and Technology at the direction of Class Counsel, a review of the

4   National Organic Standards Board's analysis of DDP in connection with organic classification

5   applications, and an analysis of the alternatives to DDP that were available to ConAgra.

6       Class Counsel also evaluated the merits of all Parties' contentions and evaluated this

7   Settlement, as it affects all Parties, including Settlement Class Members.  Plaintiffs and Class

8   Counsel, after taking into account the foregoing, along with the risks and costs of further

9   litigation, are satisfied that the terms and conditions of this Settlement are fair, reasonable and

10  adequate, and that this Settlement is in the best interest of the Settlement Class Members.  *See*

11  Tellis Decl. at ¶¶ 3, 30.

12      **C.    Mediation and Settlement Negotiations**

13      The Settlement is the product of extended arm's-length negotiations commencing with

14  mediation at JAMS conducted by the Honorable Ronald M. Sabraw (Ret.), followed by many

15  months of telephonic conferences and e-mail exchanges between experienced attorneys familiar

16  with the legal and factual issues of this case.  All Settlement Class Members are treated fairly

17  under the terms of the Settlement.  *See* Tellis Decl. at ¶ 27.

18      **D.    Class Counsel Obtained Exceptional Benefits for the Class**

19      Class Counsel obtained meaningful relief, which will serve as a benchmark for other

20  similar cases going forward.  The benefits include:

21  •   Defendant has agreed to reformulate the ingredients in the Alexia Products
        as follows: "For as long as ConAgra chooses to sell the Alexia Products,
22      ConAgra will use citric acid or other naturally-sourced compound in the
        Alexia Products, rather than disodium dihydrogen pyrophosphate.  If the
23      Food and Drug Administration determines in the future that products
        containing disodium dihydrogen pyrophosphate can be labeled 'natural,'
24      ConAgra reserves the right to use disodium dihydrogen pyrophosphate in
        the Alexia Products." *See* Settlement Agreement ¶ 2.11.
25
26  •   Defendant will establish a cash and food voucher fund ("Settlement
        Fund") requiring ConAgra to disburse up to $3,200,000.00, consisting of a
27      Cash Settlement Fund in an amount up to $2,500,000 as well as a Voucher

28

6

Settlement Fund in the amount of $700,000. *See* Settlement Agreement ¶¶ 1.25(a)-(b); 2.1(a)-(b); 2.2; and

- Each Settlement Class Member shall be entitled to choose one of the following Settlement benefits: (1) a cash payment of $3.50 for each Alexia Product purchased, up to a maximum of 10 products and $35.00 in cash; (2) two food vouchers, up to a maximum savings of $3.75 per voucher per product, for each Alexia Product purchased, up to a maximum of 10 products and $75.00 in food vouchers; or (3) a combination of cash and vouchers for up to 10 products total. *See* Settlement Agreement ¶ 2.4.

These benefits are extraordinary since this case featured complex legal issues and achieved a positive resolution for the Class despite extant negative case law from other cases. The likelihood that a greater result could be achieved at trial is remote. To address labeling issues going forward, the Settlement achieves *complete* relief in the form of a contractual commitment by ConAgra to reformulate the ingredients in the Alexia Products. As a result, the consumer will no longer be exposed to allegedly false messaging about the "all natural" status of the Alexia Products. And, the Cash Settlement Fund and Voucher Settlement Fund provide a tangible and significant monetary benefit to the Class in lieu of the continued risk of litigation. The Settlement secured by Class Counsel and the Class Representatives on behalf of the Class represents an excellent and relatively swift result for Settlement Class Members.

## III. CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE

### A. The Requested Fee-And-Expense Amount Was Agreed Upon By Sophisticated Parties After Arm's-Length Negotiations

The United States Supreme Court has encouraged a consensual resolution of attorneys' fees *as the ideal toward which litigants should strive*. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court stated "[a] request for attorney's fees should not result in a second major litigation. *Ideally, of course, litigants will settle the amount of a fee.*" *Id.* at 437 (emphasis added); *accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum

of attorneys' fees).[3]  In representative cases, it is widely recognized that fee agreements between plaintiffs and defendants are urged.  *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").  Of course, even where the parties have agreed as to the appropriate amount of the fee, the Court must still review and approve the fee.

In the absence of any evidence of collusion, a negotiated fee that does not diminish the amount of recovery by the class is entitled to substantial weight.  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337, at *12-13 (C.D. Cal. June 10, 1992) (stating that the Court should be reluctant to disturb award where class counsel negotiated fee with sophisticated defense counsel, who were familiar with case, risks, amount and value of class counsel's time, and nature of result obtained for class).  Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services, especially where, as here, the defendant has stipulated to the payment of attorneys' fees in addition to the recovery for the class.

Consistent with the foregoing precedents, the parties here negotiated the amount of fees and expenses ConAgra will pay to Class Counsel for the work that all Class Counsel did on behalf of the Class.  The result is an amount that reflects a compromise reached through arm's-length bargaining by sophisticated counsel familiar with the case, and reflects the risks for both sides, the nature of the result obtained for the Class, and the magnitude of the fee the Court might award if the matter were litigated.  It was only after the parties negotiated the other terms and

---

[3] These actions asserted California state law claims.  While fee awards are subject to judicial scrutiny, California courts also defer to the fee agreements between parties if the agreement is otherwise valid.  *Cazares v. Saenz*, 208 Cal. App. 3d 279, 287 (1989) ("where the bargaining process is a fair one, courts traditionally defer to the parties' agreement as the best measure of the value of the contract performance") (citation omitted); *Melendres v. City of L.A.*, 45 Cal. App. 3d 267, 282-83 (1975); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 47-48 (2000) ("In the class action context, that would mean attempting to award the fee that informed private bargaining, if it were truly possible, might have reached.") (citation omitted) (internal quotation marks omitted).

1    provisions of the Settlement that the parties addressed the issue of attorneys' fees.  Tellis Decl. ¶

2    49.  Additionally, ConAgra's counsel has an interest in protecting their client who has a direct

3    financial interest in the amount of the fees and expenses to be paid.  ConAgra is represented by

4    highly skilled lawyers, and does not need, nor has it sought, protection from the Court regarding

5    the amount of the fees and expenses to be paid.  Thus, the negotiated fee is entitled to a

6    presumption of reasonableness.

7         **B.      Class Counsel's Requested Fees Are Reasonable Under The Percentage Of
            The Class Benefit Approach**
8

9         Under Ninth Circuit standards, a District Court may award attorneys' fees under either

10   the "lodestar" method or the "percentage-of-the-fund" method.  *Fischel v. Equitable Life*

11   *Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150

12   F.3d 1011, 1029 (9th Cir. 1998).  The percentage-of-the-fund method of awarding fees has

13   become an accepted if not the prevailing method for awarding fees in common fund cases in this

14   circuit and throughout the United States.  Indeed, courts have long recognized that "a private

15   plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which

16   others also have a claim is entitled to recover from the fund the costs of his litigation, including

17   attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

18        Under the common fund doctrine, courts typically award attorneys' fees based on a

19   percentage of the total settlement.  *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.

20   1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming

21   attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th

22   Cir. 2003) (affirming attorney's fee award of 33% of the recovery).  When determining the value

23   of the settlement, courts consider the non-monetary benefits conferred, as well as any cash

24   attorneys' fee and cost payments to be made pursuant to the settlement terms with the

25   defendants.  *See, e.g. Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v.*

26   *Clorox Co.*, 273 F.RD. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).

27   California courts view the award to the class and the agreement on attorneys' fees a package

28                                               9

deal. *Lealao*, 82 Cal. App. 4th at 33. Thus, "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 554 (2009) (quoting the Ann. Manual for Complex Litigation § 21.71 at 525 (4th ed. 2008)). Moreover, the Court must not consider the total monetary amount distributed to the Class; rather, the Court should only consider the amount *made available* to the Class. As articulated in *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007), Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available rather than the amount actually paid out. *Id.* at *23 (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ("ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available)).

**1.    Class Counsel's Fee Request Is Within The 25% Benchmark Established By The Ninth Circuit And Is Reasonable**

The Ninth Circuit has established an attorney fee "benchmark" of 25% of the common fund.[4] *Hanlon*, 150 F.3d at 1029. The Ninth Circuit also identified five factors that are relevant in determining whether requested attorneys' fees in a common fund case are reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) awards made in similar cases; and (5) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Plaintiffs' request for an award of attorneys' fees and costs in the sum of $800,000 represents approximately 25% of the total settlement fund value of $3,200,000.00. Indeed, after deduction of the total costs incurred in the sum of $29,735.85, Plaintiffs' counsel's request for

---

[4] This benchmark "can then be adjusted upward or downward to account for any unusual circumstances . . . . Such an adjustment, however, must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989).

1   attorneys' fees is approximately 24% of the total settlement fund value of $3,200,000.00.

2   Accordingly, Plaintiffs' request is consistent with the Ninth Circuit's 25% benchmark for

3   measuring reasonable attorneys' fees under a percentage-of-the-fund approach.   Moreover, the

4   requested fees are also reasonable applying the *Vizcaino* factors.

5   **2.    Class Counsel Achieved Excellent Results For The Class**

6   Class Counsel achieved an excellent settlement in this action and realized Plaintiffs'

7   ultimate goals to: (i) change Defendant's business practices and (ii) receive compensation for the

8   alleged misrepresentations made by Defendant.   The non-monetary component requires a

9   reformulating the ingredients in the Alexia Product to include citric acid or another naturally-

10  sourced ingredients, in place of the chemical compound disodium dihydrogen pyrophosphate.

11  *See* Settlement Agreement ¶ 2.11.   Reformulation is a novel and particularly appropriate type of

12  relief in "all natural" cases.   Indeed, reformulation will help ensure that future shoppers will no

13  longer be exposed to false messaging about the "all natural" status of the Alexia Products.

14  Plaintiffs are not aware of any other "all natural" case where a defendant has agreed to

15  reformulate the products at issue as a term of the settlement.

16  For the purposes of calculating fees based on the common fund approach, Class Counsel

17  did not attribute any monetary value to the ConAgra's agreement to reformulation because: (1)

18  this form of relief does not easily lend itself to monetary valuation without the benefit of, and

19  expense and time associated with, expert opinions and (2) Class Counsel's requested fee is

20  within the Ninth Circuit's "benchmark" without attributing any value to ConAgra's agreement to

21  reformulate.   Thus, a conservative estimated value of the settlement exceeds $3.2 million.

22  The Settlement requires Defendant to disburse up to $3,200,000.00, consisting of a Cash

23  Settlement Fund in an amount up to $2,500,000 as well as a Voucher Settlement Fund in the

24  amount of $700,000.   The Settlement Class members shall be entitled to choose one of the

25  following Settlement benefits: (1) a cash payment of $3.50 for each Alexia Product purchased,

26  up to a maximum of 10 products and $35.00 in cash; (2) two food vouchers, up to a maximum

27  savings of $3.75 per voucher per product, for each Alexia Product purchased, up to a maximum

28
                                        11

1  of 10 products and $75.00 in food vouchers; or (3) a combination of cash and vouchers for up to

2  10 products total.  *See* Settlement Agreement ¶ 2.4.  Thus, the resolution of this case through

3  settlement provides the Settlement Class with the benefit of significant financial recovery

4  without the delay of continued litigation.  *In re Critical Path, Inc. Sec. Litig.*, No. C. 01-00551,

5  2002 U.S. Dist. LEXIS 26399, at *30 (N.D. Cal. June 18, 2002) ("[i]t is a relevant circumstance

6  that counsel achieved a timely result for the class members in need of immediate relief.")

7  (citation omitted) (internal quotation marks omitted).  Here, Class Counsel provided a valuable

8  benefit to the Class by securing the Settlement early in the life of the litigation.  As such, the

9  results achieved by the Settlement support the fee request.

10           **3.      Plaintiffs' Claims Carried A Substantial Amount of Risk**

11          From the outset, Class Counsel undertook significant financial risk in prosecuting this

12  case.  Class Counsel undertook this matter solely on a contingent basis with no guarantee of

13  recovery.  Class Counsel risked their resources to prosecute this action.  There was no assurance

14  that this case would have been certified, that certification would include a nationwide class, or

15  that Plaintiffs would have succeeded at trial.

16          This was not a simple case.  Throughout the litigation, ConAgra took the position that

17  Plaintiffs' allegations about the meaning of "natural" ignore the FDA's recognition that "natural"

18  is susceptible to a variety of meanings.  *See* Motion to Dismiss 5:7-9, ECF No. 13.  Specifically,

19  Defendant highlighted the fact that although Congress vested the FDA with broad authority to

20  regulate the labeling and advertising of foods and beverages under the Federal Food, Drug and

21  Cosmetic Act, 21 U.S.C. § 393(b), the FDA has never used that authority to implement a formal

22  definition or regulation governing use of the term "natural."  Motion to Dismiss 5:12-16.  Thus,

23  Plaintiffs undertook the significant risk of litigating this case in light of the complexity of the

24  legal and factual matters at issue, with no guarantee of recovery.

25          Moreover, even if the Court certified a class, on ConAgra's or the Court's own motion,

26  the class could be decertified at any time.  *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379-

27  EJD, 2013 U.S. Dist. LEXIS 37286, at *15-16 (N.D. Cal. Mar. 18, 2013) ("The notion that a

28

12

district court could decertify a class at any time is one that weighs in favor of settlement" (internal citations omitted)).  Additionally, the Ninth Circuit's decision in *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012), which questioned the viability of certifying a nationwide class under California's consumer protection and unjust enrichment laws, could have had a direct bearing on this case if it were to proceed in litigation.  The *Mazza* decision would have resulted in much debate over the size and parameter of any class Plaintiffs could certify. As certification remains unknown, this factor too weighs in favor of finally approving this Settlement.

Even assuming Plaintiffs were to survive a motion for summary judgment, the risks of establishing liability posed by conflicting expert testimony would be exacerbated by the unpredictability of a lengthy and complex trial. Tellis Decl. ¶ 42.  In a "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  *Id.*  Even if Plaintiffs were to prevail on the issue of liability, there would still be risks in establishing the existence of monetary damages based on the inclusion of DDP in the Alexia Products.  *Id.* at 43.  The experience of Plaintiffs' counsel has taught them that the above-described factors can make the outcome of trial extremely uncertain.  *Id.* at 46.  Nevertheless, Plaintiffs' counsel accepted the risk, vigorously litigated this action on behalf of the class and reached a valuable Settlement through extensive arm's-length negotiations with defendants.

### 4. Prosecuting This Case Required Substantial Skill, Resulting In The Highest Quality Of Representation For The Class

The prosecution of a complex, nationwide class action "requires unique . . . skills and abilities." *In re OmniVision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citation omitted) (internal quotation marks omitted).  This case involved matters that required significant expenditure of Class Counsel's time such as: (1) extensive pre-litigation investigation; (2) consulting with industry experts; (3) extensive and detailed legal research into the substantive law of the causes of action at issue; (4) developing and executing litigation strategies; (5)

13

researching and preparing for class certification; (6) developing and executing mediation and settlement strategies; and (7) analyzing data and information exchanged between the parties to assure that the Settlement's terms are based upon objective evidence that had been thoroughly considered in the context of the risks, expenses, and benefits of continuing to litigate the case. Tellis Decl. ¶¶ 10, 25-27.

Class Counsel vigorously and competently pursued the Settlement Class Members' claims. The arm's-length settlement negotiations that took place demonstrate that Class Counsel adequately represented the Settlement Class. Moreover, Plaintiffs and Class Counsel have no conflicts of interests with the Settlement Class. Rather, Plaintiffs, like each absent Settlement Class Member, have a strong interest in proving ConAgra's common course of conduct, establishing its unlawfulness and obtaining redress. In pursing this litigation, Class Counsel, as well as Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Class. Class Counsel have extensive experience and expertise in prosecuting complex class actions. Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation. *See* Tellis Decl. Ex. A and Declaration of David E. Bower ("Bower Decl.") Ex. A for Class Counsel's firm resumes. Baron & Budd, P.C. and Faruqi & Faruqi, LLP were appointed Co-Lead Class Counsel for the proposed Class on May 9, 2012 and counsel for the Settlement Class on July 30, 2013.

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 635-36 (D. Colo. 1976). ConAgra is represented by Hogan Lovells, a prominent international law firm with more than 2,500 lawyers and extensive experience in class action litigation. Class Counsel's ability to obtain a favorable Settlement in the face of this sophisticated legal adversary reflects their superior work quality.

### 5.   Courts Have Ordered Similar Or Greater Percentage Fees Awards In Consumer Class Actions

Courts in this Circuit have awarded fees of 25% to 30% or more in common fund cases. *See, e.g., Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) (awarding 25%); *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009) (awarding 25%).  In fact, California district courts have awarded more than the typical 25% benchmark in common fund settlements.  For example, when awarding 32.8% of the settlement fund for fees and costs, the Honorable Judge Marilyn Hall Patel explained: "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%[,]" as "[t]his will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989); *see also In re Pac. Enters.*, 47 F.3d at 379 (affirming attorney's fee of 33% of the recovery); *Williams*, 129 F.3d at 1027 (33.33% of total fund awarded);   *Morris*, 54 F. App'x at 664 (affirming fee award of 33% of the recovery); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing to five recent class actions where federal district courts approved attorney fee awards ranging from 30% to 33%); *Martin v. AmeriPride Servs., Inc.*, No. 08-CV-440-MMA (JMA), 2011 U.S. Dist. LEXIS 61796, at *23 (S.D. Cal. June 9, 2011) (noting that "courts may award attorneys fees in the 30%–40% range in . . . class actions that result in recovery of a common fun[d] under $10 million") (citation omitted); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821- IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and holding that award was similar to awards in three other cases where fees ranged from 33.33% to 40%); *Ingalls v. Hallmark Mktg. Corp.*, No. 08-CV-4342 VBF, 2009 U.S. Dist. LEXIS 131081 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million common fund settlement).

15

Moreover, the Southern District of California recently approved a 25% fee on a $4,000,000 settlement in a strikingly similar case concerning false representations made on food product labels. *See Koz v. Kellogg Co.*, No. 09-CV-1786-IEG (WMC), 2013 U.S. Dist. LEXIS 129205 (S.D. Cal. Sept. 10, 2013). There, the settlement conferred a total financial benefit to the class in excess of $4,000,000, including both a non-reversionary cash fund of $4,000,000 and injunctive relief which the court determined would benefit both class members and non-class consumers going forward. *Id.* at *22-23. The District Court found that in light of the results achieved, the requested fees appear reasonable of $1,000,000, which constituted 25% of the fund; appeared reasonable. *Id.* at *23.

The percentage of the fund created through the Settlement supports the reasonableness of Class Counsel's fee and expense request and is consistent with the 25% benchmark. Class Counsel's requested fees are fair and reasonable.

### 6.    Reaction of the Class

To date, no member of the Class has objected to the Settlement, and only two Settlement Class Members have requested exclusion. Tellis Decl. ¶ 47. The reaction of the class may be a factor in the determining of a fee award. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1048 ("None of the [three] objectors raised any concern about the amount of the fee. This factor . . . also supports the requested award of 28% of the Settlement Fund."); *see also In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627, at *48 (C.D. Cal. June 10, 2005) ("[t]he presence or absence of objections from the class is also a factor in determining the proper fee award.") (citations omitted). Although Plaintiffs acknowledge that objections are not due until November 27, 2013, the reaction of the Class to the Settlement thus far, including its fee provisions, is overwhelmingly positive and supports a finding that the requested fees are fair, reasonable, and adequate.

### C.    Lodestar Cross-Check Also Supports The Requested Fee Award

The Ninth Circuit has recognized the value of comparing the lodestar to percentage of the fund approaches. "Courts may compare the two methods of calculating attorney's fees in

16

1    determining whether fees are reasonable." *Fischel*, 307 F.3d at 1007 (citation omitted). Courts in

2    the Ninth Circuit often examine the lodestar calculation as a cross-check on the percentage fee

3    award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at 1050. The

4    cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the

5    number of hours reasonably expended by the reasonable rates requested by the attorneys. *See*

6    *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000). Second, the court

7    determines the multiplier, if any, required to match the lodestar to the percentage-of-the-fund

8    request made by counsel, and determines whether the multiplier falls within the accepted range

9    for such a case. Here, the lodestar cross-check confirms that the 25% request is reasonable.

10            Plaintiffs request that the Court approve an award of attorneys' fees and costs in the sum

11    of $800,000 to be paid by ConAgra pursuant to the terms of the Settlement. If awarded, after the

12    deduction of expenses, the attorneys' fees represent approximately 24% of the total value of the

13    $3,200,000 Settlement – a reasonable request given the risks of the case and the results achieved.

14    This method of calculating the fee award, based on a percentage of the fund, is straightforward

15    and fair under the circumstances of the case.

16            Cross-checking the agreed upon fee request against a lodestar fee calculation validates its

17    reasonableness. Plaintiffs' counsel incurred a total of $787,217.35 in attorneys' fees and costs.

18    Thus, the agreed upon sum of $800,000 in attorneys' fees and costs results in a fractional or

19    nominal multiplier (1.016) of Class Counsel's aggregate lodestar. The nominal or fractional

20    multiplier (1.016) produced by cross-checking the agreed upon 25% sum against Plaintiffs'

21    counsel's current lodestar falls well within the accepted range in the Ninth Circuit, and is

22    reasonable. *See, e.g., Vizcaino*, 290 F.3d at 1050-51 (approving 28% fee after lodestar

23    crosscheck resulted in a multiplier of 3.65); *Craft*, 624 F. Supp. 2d at 1125 (approving 25% fee

24    award resulting in a multiplier of 5.2, and collecting similar cases). The nominal or fractional

25    multiplier provided by the lodestar cross-check demonstrates that the percentage fee sought by

26    Class Counsel is justifiable and reasonable.

27

28                                                    17

**D.    The Court May Alternatively Grant The Requested Attorneys' Fees Under The Lodestar Method**

Under Ninth Circuit standards, a District Court may award attorneys' fees under the "lodestar" method. *Hanlon*, 150 F.3d at 1029. The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029. The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)[5]. Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed. *Vizcaino*, 290 F.3d at 1051.

**1.    Class Counsel Have Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate**

To assist the Court in evaluating the reasonableness of the time spent on this case, Class Counsel have presented a schedule of their time records. Tellis Decl. ¶ 52, Ex. B; Bower Decl. at ¶ 8, Ex. B. Each firm has also submitted a description of its current hourly rates.[6]

---

[5] *Kerr* identifies twelve factors for analyzing reasonable attorneys' fees:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

[6] On October 25, 2013, Faruqi & Faruqi's hourly rates were approved by the Honorable Edward J. Davila in *In re Haier Freezer Consumer Litigation*, Case No. C11-02911 EJD, ECF No. 90

18

Class Counsel devoted a total of 1,150.50 hours successfully prosecuting this litigation and negotiating its Settlement and have incurred $29,735.85 in out-of-pocket expenses. Tellis Decl. ¶¶ 52-53, Exs. B and C; Bower Decl. at ¶¶ 8,14, Exs. B and C. These efforts have resulted in a total lodestar fee of $757,481.50. This current lodestar represents the total work Class Counsel have undertaken since the inception of this case. The hours spent on this case are reasonable and reflect the ability and efficiency of Class Counsel. Moreover, counsel's hourly rates are reasonable and comparable to hourly rates in this forum for comparable services. Tellis Decl. ¶ 63; Bower Decl. ¶ 10. The work performed to date, along with the work anticipated going forward, supports Class Counsel's lodestar.

The requested amount of $800,000 is inclusive of both attorneys' fees and litigation costs, and will be paid, subject to the Court's approval, by ConAgra will be from the Cash Settlement Fund. After reimbursement of $29,735.85 in costs and expenses, the remainder for fees is $770,264.15. Thus, the agreed upon requested fee results in a factional or nominal multiplier (1.016) on Class Counsel's combined lodestar of $757,481.50.

The lodestar analysis is not limited to the initial mathematical calculation of class counsel's base fee. *See Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996). Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364. In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3. *Vizcaino*, 290 F.3d at 1051 n.6 (citation omitted); *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §

(N.D. Cal. Oct. 25, 2013) (granting plaintiffs' motion for final approval and for award of attorneys' fees, costs, and incentive awards).

14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).  Yet state and federal courts often grant multipliers of four or more.[7]

### a.    Novelty And Complexity Of This Litigation

The novelty and complexity of this case also supports the requested fee.  Class Action matters are generally complex, but this one is particularly so due to the interplay between the FDA guidelines and false advertising laws.  The contested issues in the litigation were complex, including determinations of whether ConAgra's product labels were false or misleading.  These issues were hotly contested and were subject to a motion to dismiss.  Defendant took the position that Plaintiffs' allegations about the meaning of "natural" ignore the FDA's recognition that "natural" is susceptible to a variety of meanings.  In opposing Defendant's position, Plaintiffs were faced with difficult legal and factual issues, which required creativity and sophisticated analysis.  Plaintiffs took the position that as a matter of law, a reasonable consumer would not find Defendant's unequivocal "all natural" claim to be misleading and common sense suggests that a product containing the synthetic chemical preservative, DDP, is not "all" natural.

Moreover, and as discussed above, the non-monetary relief in this case is a novel and a particularly appropriate type of relief in this kind of "all natural" action.  The agreed upon reformulation of the ingredients in the Alexia Products will help ensure that future shoppers will no longer be exposed to false messaging about the "all natural" status of the Alexia Products.  Plaintiffs are not aware of any other "all natural" case where a defendant has agreed to reformulate the products at issue as a term of the settlement.

---

[7] *See, e.g., In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (approving multiplier of 2 in securities class action); *Rabin v. Concord Assets Grp., Inc.*, No. 89 CIV. 6130 (LBS), 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) (approving multiplier of 4.4 in securities class action); *Mun. Auth. of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982 (M.D. Pa. 1981) (approving multiplier of 4.5); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to 5); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving multiplier of 5.5); *In re Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (approving multiplier of 6); *Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*, No. 86-1104, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) (approving multiplier of 8.3 in a consumer class action).

1    Settlement negotiations included multiple formal and informal discussions, which were

2    complicated both in terms of the subject matter and damages analyses at issue.  Tellis Decl. ¶¶

3    22-23, 26.  Moreover, this required substantial original work, and significant risk that Class

4    Counsel's efforts (and their out-of-pocket costs) would go uncompensated.  Given this

5    landscape, the fact that Class Counsel negotiated this Settlement is a notable achievement.

6         **b.    Class Counsel Provided Exceptional Representation**
               **Prosecuting This Complex Case**
7

8    Class Counsel respectfully submit that they conducted themselves in this action in a

9    professional, diligent and efficient manner.  Class Counsel are highly-respected and experienced

10   leaders in the field of consumer class action litigation. See Tellis Decl. ¶ 39; Bower Decl. ¶ 3

11   (attaching firm resumes).  Tasks were allocated to prevent "over-lawyering" and inefficiency.

12   The bulk of the work was performed by a limited number of attorneys fully familiar with the

13   complex factual and legal issues presented by this litigation.  This division of labor permitted the

14   work to be done efficiently, resulting in an economy of service and avoiding duplication of

15   effort.

16   Class Counsel invested a substantial amount of time and resources into investigations

17   relating to the matters alleged in this action, including, but not limited to consulting with industry

18   personnel, extensive consultation with experts, reviewing and analyzing documents and data

19   produced by ConAgra, and analyzing the ingredients in the Alexia Products, an analysis of DDP

20   and the Alexia Products, which was conducted by a Professor of Food Science and Technology

21   at the direction of Class Counsel, a review of the National Organic Standards Board's analysis of

22   DDP in connection with organic classification applications, and an analysis of the alternatives to

23   DDP that were available to ConAgra.

24   The successful conclusion of this litigation required Class Counsel to commit a

25   significant amount of time, personnel, and expenses, on a contingency basis, with absolutely no

26   guarantee of being compensated in the end.  Additionally, the ability of Class Counsel to obtain a

27   favorable Settlement in the face of a high caliber legal adversary also reflects the superior quality

28
                                              21

of Class Counsel's work.  ConAgra  represented by Hogan Lovells, a prominent international law firm with more than 2,500 lawyers and extensive experience in class action litigation.  Class Counsel's ability to obtain a favorable Settlement in the face of this sophisticated and skilled legal adversary reflects their superior work quality.

### c.    Class Counsel Obtained Excellent Class Benefits

The Settlement provides significant relief for the Class.  Class Counsel negotiated a Settlement with a total value of up to $3,200,000.00.  Depending on which Settlement "option" chosen, Settlement Class members shall be entitled to choose one of the following Settlement benefits: (1) a cash payment of $3.50 for each Alexia Product purchased, up to a maximum of 10 products and $35.00 in cash; (2) two food vouchers, up to a maximum savings of $3.75 per voucher per product, for each Alexia Product purchased, up to a maximum of 10 products and $75.00 in food vouchers; or (3) a combination of cash and vouchers for up to 10 products total. *See* Settlement Agreement ¶ 2.4.    Furthermore, the Settlement Agreement requires the reformulating the Alexia Product to include citric acid or other naturally-sourced compound in place of the synthetic disodium dihydrogen pyrophosphate.  *See* Settlement Agreement ¶ 2.11. As discussed above, this reformulation will help ensure that future shoppers will no longer be exposed to false messaging about the "all natural" status of the Alexia Products.  But for purposes of calculating fees based on the common fund approach, Class Counsel did not attribute any monetary value to the ConAgra's agreement to reformulation since this type of relief does not easily lend itself to monetary valuation without the benefit and expense of expert opinions. Thus, a conservative estimated value of the settlement exceeds $3.2 million.

Class Counsel avoided considerable burdens and expenses to the parties and the judicial system by conducting a thorough investigation and achieving a favorable Settlement in a timely fashion.  The outstanding results achieved by Class Counsel here fully justify the requested fee.

### d.    Class Counsel Faced A Substantial Risk Of Nonpayment

A critical factor bearing on fee petitions in Ninth Circuit courts is the level of risk of non-payment faced by Class Counsel at the inception of the litigation. *See, e.g., Vizcaino*, 290 F.3d at

22

1048.  The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that

any recovery would be obtained, are significant.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,

19 F.3d 1291, 1300 (9th Cir. 1994).   In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . .  [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted).

Throughout this case, Class Counsel expended substantial time and costs to prosecute a nationwide class action suit with no guarantee of compensation or reimbursement in the hopes of prevailing against sophisticated Defendants represented by high caliber attorneys.  *See* Tellis Decl. ¶ 64.  Class Counsel obtained a highly favorable result for the Class, knowing that if their efforts were ultimately unsuccessful, they would receive no compensation or reimbursement for their costs.  Class Counsel prosecuted the case with the type of vigor and skill required to ensure justice for the Class.  This fact alone supports a finding that Class Counsel are entitled to a multiplier.

## IV.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $29,735.85 in prosecuting this litigation on behalf of the class.  Tellis Decl. ¶ 53; Bower Decl. ¶ 14.  These expenses are categorized in the declarations submitted to the Court.

The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of a class action settlement.  *See Staton*, 327 F.3d at 974.  Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee paying client. (citation omitted).  *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  The incurred costs include court fees, copying fees, courier charges, legal research charges, telephone/facsimile fees, travel costs, postage fees, and other related costs.  Tellis Decl. ¶ 53, Ex.

23

1   C.; Bower Decl. ¶ 14, Ex. C. Each cost was necessarily and reasonably incurred to bring this

2   case to a successful conclusion, and they reflect market rates for various categories of expenses

3   incurred.

4   **V.    THE REQUESTED INCENTIVE AWARDS FOR CLASS REPRESENTATIVES**
        **ARE REASONABLE AND STANDARD**
5

6          In recognition of their efforts on behalf of the Class, and subject to the approval of the

7   Court, ConAgra has agreed to pay Class Representatives up to $5,000 each as appropriate

8   compensation for their time and effort serving as the class representatives in this litigation.

9   Incentive awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563

10  F.3d 948, 958 (9th Cir. 2009). Such awards "are intended to compensate class representatives

11  for work done on behalf of the class, to make up for financial or reputational risk undertaken in

12  bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

13  general." *Rodriguez*, 563 F.3d at 958-59. Incentive fees are committed to the sound discretion of

14  the trial court and should be awarded based upon the court's consideration of, *inter alia*, the

15  amount of time and effort spent on the litigation, the duration of the litigation and the degree of

16  personal gain obtained as a result of the case. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp.

17  294, 299 (N.D. Cal. 1995). Incentive awards are appropriate when a class representative will not

18  benefit beyond ordinary class members. Where a class representative's claim makes up "only a

19  tiny fraction of the common fund," an incentive fee is justified. *Id.* Here, Class Representatives

20  will not receive any unusual or extraordinary benefit, justifying the requested awards.

21         The requested amounts of $5,000 for each Class Representative reflect the involvement

22  and time each Class Representative dedicated to the case. The involvement of the Class

23  Representatives in this action was critical to the ultimate success of the case. Class Counsel

24  consulted with the Class Representatives throughout the investigation, filing, prosecution and

25  settlement of this litigation. Tellis Decl. ¶ 67. As such, Class Representatives were actively and

26  effectively involved in the litigation and devoted substantial time and effort to the case. They

27  consulted with Class Counsel frequently and reviewed a wide variety of documents related to

28
                                                24

this case including the complaint and Settlement Agreement. *Id.* Moreover, they were prepared to "go the distance" in this litigation to continue to properly represent the Class and fight to obtain significant relief on their behalf. *Id.* Their actions and dedication have conferred a significant benefit on the Settlement Class across the United States.

Accordingly, incentive awards of $5,000 for each of the Class Representatives are fair and reasonable.[8]

## VI.    CONCLUSION

Class Counsel were able to obtain a settlement that represents an excellent result for the Class. This Settlement is the culmination of the determined and skilled work of Class Counsel. Accordingly, Plaintiffs respectfully request that this Court award Class Counsel's request for attorneys' fees and expenses of $800,000. The Court should also award Class Representatives, Vicuña, Kyle, and Eckstein, incentive fees in the amount of $5,000 each (for a total of $15,000).

Dated: October 28, 2013                    Respectfully Submitted,

                                           **BARON & BUDD, P.C.**

                                           By: _____ /s/ Roland Tellis _____

                                           Roland Tellis (State Bar No. 186269)
                                           Mark Pifko (State Bar No. 228412)
                                           Natasha Mehta (State Bar No. 272241)
                                           15910 Ventura Boulevard
                                           Encino, CA 91436
                                           Telephone: (818) 839-2333
                                           Facsimile: (818) 986-9698

---

[8] The payment of service awards to successful class representatives is appropriate and the amount of $5,000 is undoubtedly reasonable when compared to other service awards. See *Van Vraken*, 901 F. Supp. at 299-300 (incentive award of $50,000); *Harris v. Vector Mktg. Corp.*, No. 08-5198, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 service award); *Bond v. Ferguson Enters.*, No. 09-01-01662, 2011 U.S. Dist. LEXIS 77692 (E.D. Cal. July 18, 2011) (approving service awards of $11,250).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE FEES TO CLASS REPRESENTATIVES; MEMORANDUM OF LAW
Case No: 11-CV-06119-PJH

**FARUQI & FARUQI, LLP**
David E. Bower (State Bar No. 119546)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

*Plaintiffs' Counsel and Counsel for Settlement Class*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE FEES TO CLASS REPRESENTATIVES; MEMORANDUM OF LAW
Case No: 11-CV-06119-PJH